The President, having again noticed the cause of action, and the state of the pleadings, proceeded in delivering the following charge to the jury:
 

 Shippen, President.
 

 A bankrupt law, in a trading country, must be productive of many benevolent and beneficial consequences. When an unfortunate trader has fairly and honestly surrendered all his property for the use of his creditors, the legislature certainly intended, that ho should be effectually discharged from all his debts, and left at liberty to acquire new substance; and there are many instances in England, where, by this encouragement, bankrupts have been enabled, not only to extricate themselves and their families from the calamities that oppressed them, but to indulge an honorable disposition in paying those obligations, from which they were thus, by law, exonerated.
 

 It has often happened, however, that, on the other hand, the bankrupt acts have been perverted to the iniquitous purposes of fraud and embezzlement; and therefore, it is requisite, that, on every occasion, the strictest scrutiny should take place. With this view, our act of assembly, corresponding with the English statute, directs commissioners to be appointed, who, having received the necessary proofs of the party’s being a trader, and of the commission of an act of bankruptcy, are amply empowered to investigate the bankrupt’s conduct, and to compel a disclosure and surrender of all his property; and when this is satisfactorily done, they are authorised and required to grant him a certificate of his conformity to the law. In England, this certificate (which, when fairly obtained, is a complete discharge and release from all the former debts *of the bankrupt), can-J not be granted, without the consent of four-fifths in value of the creditors; but in Pennsylvania, the granting it rests entirely with the commissioners; and there is no check upon its operation, but that it must be first allowed by the president of the supreme executive council, under the great seal of the commonwealth.
 

 In the case under consideration, the commissioners have granted, and the president has allowed, a certificate in favor of the defendants ; but four exceptions have been taken to the proceedings on which the certificate is founded, in order to maintain the plaintiff’s action, which is brought for the recovery of a debt contracted before the act of bankruptcy. The court being of opinion, that the evidence in support of these exceptions ought to be submitted to the jury, it now only remains to consider, whether the exceptions themselves are sufficient, in law, to defeat the benefit which the defendants claim from the certificate.
 

 1. In the first place, it is said, that the debt of the petitioning creditors, was not such as warranted the issuing of the commission ; for it was contracted before the act of assembly for the regulation of bankruptcy, although
 
 *405
 
 a bond of a subsequent date was given for it: and tbe plaintiff’s counsel have contended, that this relation between the bond and the former debt is sufficient to take the case out of the act. On .the part of the defendants, however, it is insisted, that the original debt was extinguished by the bond, which they allege, is the creation of a new debt, so as to satisfy the provision in the 3d section of the law.
 

 The general doctrine of extinguishment is, at this day, well settled and understood. If a creditor upon a promissory note, or book-account, accepts a bond for the amount from his debtor, this, being a security of a higher nature, extinguishes the first debt, and the creditor cannot afterwards sue upon the note or account, but must proceed for the recovery of his money upon the bond alone,
 
 (a)
 

 There is, however, no authority precisely in point to the question now agitated ; but the determizzation izz Cases temp. Hardw. 267, is thought by the plaintiff’s counsel to be in a great degree analogous. On that occasion, a bond had been taken, after an act of bankruptcy (of which the obligee had no notice), for a simple-contract debt due before, and as any debt that acezares after an act of bankruptcy is not entitled to a dividend, the chancellor there considered the debt, as it originally stood, in order to give the benefit of it to a creditor, who would othez-wise have been excluded, without any default on his part, from a distributive share of the bankrupt’s effects. This case, therefore, it is objected by the defendant’s counsel, must have depended zzpon the peculiar circumstances in which it was izzvolved ; and that this appears the more evidently, as Lord Hardwicke expressly says, that, between the parties themselves, the bond would operate as an extinguishment of the precedent debt. There can be no doubt, indeed, that mazzy of the cases on this subject have been determined by the particular circumstances that attended them ; *for we fizzd, that a transactiozz of a similar nature ^ with that just cited, but presented in a different point of view, was *- decided directly the other way. 1 Term Rep. 715. A bankrupt, after azz act of bankruptey committed, had given a bond with wairant to confess judgment to one of his creditors for a debt dzie befoz-e the act of bankruptcy ; the judgment was entez-ed and a
 
 ca. sa.
 
 issued. Afterwards, the bankz-upt obtained his certificate, and moved to be discharged from this execution, alleging the cause of action arose prior to the act of bankruptcy ; but the court izz this case decided, that the boizd was an extinguishnzeizt of the old debt, and, accordingly, denied the motion.
 
 (Birch
 
 v.
 
 Sharland.)
 

 But there are mazzy reasons which might be ui-ged to distinguish the present case from that determined by Lord Hardwicke. When tire boizd was givezz by the defendants to Rose & Dickens, zzo act of bankruptcy had been committed ; zio dividend was to be claimed ; izo persons, but the parties themselves, were intez-ested ; and, as nothing appears to preclude the idea that this was a voluntary exchange of securities, certain it is, that after the acceptance of the bond, Rose
 
 &
 
 Dickens could never have recovered upon
 
 *406
 
 the original debt. In all these respects, therefore, there is a material difference between the authority cited, and the case in controversy — a difference which seems strongly to support the argument of the defendant’s counsel, that thé bond was an extinguishment of the preceding debt.
 

 Even, however, if the law is doubtful, from the frequency of the practice of entering into voluntary bonds, for the very purpose of obtaining a commission, I should be unwilling to recommend it to the jury, on that ground alone, to invalidate the certificate : and therefore, as we have indeed no positive rule to guide us, but the whole rests on an implication arising from the cases, the jury must decide for themselves. I Avill only add, on this objection, that the legislature probably introduced the p>roviso in the third section (vrith, I presume, a view particularly to foreigners), in order to evince, that it Avas not intended to abrogate all former contracts and obligations : and as it is only the debt of the petitioning creditor that must be subsequent to the passing of the act (for the commission having issued, all debts prior, as well as subsequent, are included), no great mischief can ensue from this restriction, or from the method Avhich has been generally taken to bring the debt of the petitioning creditor Avithin the words of the law.
 

 2. The second objection is, that a petition subscribed by one of two partners, in the name of himself and partner, is not a legal ground for issuing a commission ; and this is said to be supported by a decision of this court, in case of
 
 Gerard
 
 v.
 
 Basse et al. (ante,
 
 p. 119). There can be no doubt of the legality of that decision. A- bond is technically termed a deed ; and the doctrine with respect to the efficacy of a deed, stands upon its OAvn footing ; none being bound by it, but the persons who actually execute it. In commercial matters, however, the act of one jiartner is the act of both
 

 (a)
 

 *3901 *an<^ therefore, it is necessary to consider, whether the petition of a J creditor to obtain a commission, is most like a deed, or a commercial act. It appears to me, indeed, to bear a strong resemblance to an action at law ; and as one partner may institute a suit, and the oath of one will be sufficient to establish the debt, on a question of bail, I cannot conceive any satisfactory reason, why more should be required for the purposes of the bankrupt law ; and therefore, in my opinion, this objection ought not to weigh with the jury.
 

 3. The third objection argues, that the partnership that subsisted between the defendants, had been virtually dissolved by the general assignment of their property ; and that, therefore, a joint commission could not issue against them. I have not had time to examine the authorities upon this point, but, I believe, the doctrine to be well founded, that there must be a subsisting partnership, at the time a joint commission is taken out, and is seems also reasonable, to infer the dissolution of a partnership from an act, by which all its objects are alienated and transferred. The barely executing an assignment, however, of the stock in trade, if the joint transactions are not at an end, Avill not be an actual dissolution of the partnership ; for where there is no express agreement to make that dissolution, the assignment can only be considered as circumstantial evidence of it, which the defendant is at liberty to repel by contrary proof.
 

 
 *407
 
 Whether, therefore, the trading subsequent to the general assignment was fictitious, and merely for the purposes of a bankruptcy, as the plaintiff contends ; or, whether it was a continuance of the former copartnership, as the defendants allege, must depend upon the facts, on which it is the province of the jury to decide. If they should think that the old partnership was dissolved, and no new one contracted, then, there was not any legal origin for the joint commission — to found a commission upon a fictitious partnership being certainly unfair. But if, on the other hand, there was really a partnership between the defendants, at the time of their bankruptcy, neither the previous assignment of their effects, nor the smallness of the quantity of goods in their store (a matter only to be considered as circumstantial evidence of a fictitious trading), can have any effect upon the case to invalidate the commission, or to defeat the certificate!
 

 4. The fourth objection is, that two of the defendants, Goodwin and Smith, have not committed acts of bankruptcy ; and therefore, it is argued, that the verdict of the jury must, at least, be against them! As these persons resided in New Jersey, it is said, in support of this objection, that Meng’s store, or the ferry-house (at both which they were denied, and at the last place, they concealed themselves from the sheriff’s officer), cannot be deemed their home, so as to satisfy the words of the act, in describing an act of bankruptcy, by “ beginning to keep house of which the usual proof is certainly, a demand and denial. Under the decisions in England *(and our law is subject to the same construction), a person who ^ resides in a foreign country, trades to that kingdom, and afterwards *• goes thither, is clearly within the statute. It is true, that, considering the mere phrase, it seems absurd to say, that a man keeps his house, who has, in fact, no house to keep, and yet, there is a case expressly to that point, where a man, having no home of his own, was held to have committed an act of bankruptcy, by keeping house in the dwelling of another.
 

 But the defendants’ counsel have controverted this objection, upon the ground of a departure out of the state ; which, they say, applies as well to a stranger as an inhabitant ; while, in behalf of the jflaintiff, it is contended, that, as the only proof of a departure by Goodwin and Smith, is that of going to their own house in New Jersey, this cannot, upon .principle or jirecedont, be construed into an act of bankruptcy. From the evidence, it appears, that a writ had issued against the four defendants, of which all of them had notice ; two of them, it is agreed, committed acts of bankruptcy, and the other two, being inquired for, at the. store of Meng, and also at the ferry-house, where they had ordered a boat to be ready, for the oxjrress purpose of avoiding an arrest, did actually quit the state, upon hearing that the sheriff’s officer was in pursuit of them. This conduct, in the common cases of a resident, would, undoubtedly, amount to an act of bankruptcy ; for it has often been determined, that, if a man goes from home, but a day, in order to-delay or defraud his creditor, it is sufficient to bring him within the statute. Whether, however, the flight of a stranger to his own home in another state, is such a departure as the law intends, the cases have left in great obscurity, for the only principle ascertained by them, is, that the departure must be with a view to delay or defraud ; and the act of parliament’ itself contains no distinction of the' nature now contended for. On so doubtful a point,
 
 *408
 
 therefore, the court would rather, at this time, .'save the decision at large to the jury, than venture a positive opinion.
 

 Such then are the objections on which the plaintiff insists that his action is maintainable ; and if, upon the whole, the jury think he has proved (as it is incumbent upon him to do) that the certificate has been
 
 unfairly
 
 obtained; either because the commission ought not to have issued, or that the certificate ought hot to have been granted, their verdict must be in his favor. But if, on the contrary, there has been no illegal or unfair methods pursued by the defendants to obtain their certificate, they are discharged from the plaintiff’s demand, and the verdict must be for them.
 

 After staying out some time, the jury returned to the bar, and declared that they could not agree in a verdict ; whereupon, they were dismissed by consent of the parties, and a
 
 venire facias de novo
 
 awarded,
 

 (a)
 

 (a)
 

 See Musgrove
 
 v.
 
 Gibbs, ante, p. 216; Latapie
 
 v.
 
 Pecholier, 2 W. C. C. 180; Charles v. Scott, 1 S.
 
 &
 
 R. 294; Watts
 
 v.
 
 Willing, 2 Dall. 100; Wilson
 
 v.
 
 Hurst, Peters C. C. 441; Axers
 
 v.
 
 Mussleman, 2 Bro. 115; Roberts
 
 v.
 
 Gallaher, 2 W. C. C. 191; Hart
 
 v.
 
 Boller, 15 S. & R. 162; Leas v. James, 10 Id. 107; Brown Jackson, 2 W. C. C. 24; Parker
 
 v.
 
 United States, Peters C. C. 262.
 

 (a)
 

 See Tillier v. Whitehead,
 
 ante,
 
 p. 269, and the cases cited in the note to that case
 

 (a)
 

 I have been informed by Mr. Ingersoll, one of the plaintiff’s counsel, that his client, acting on this occasion upon motives of public spirit, was satisfied with having obtained the opinion of the court in favor of the right to investigate the proceedings before the commissioners of bankrupts, &c., upon a trial at law; and that, therefore, probably, this action would never be prosecuted further.
 

 The counsel were
 
 Ingersoll
 
 and
 
 Ramie,
 
 for the plaintiff;
 
 Lewis, Wilcocks
 
 and
 
 Fisher
 
 for the defendant.