72 U.S. 785
 18 L.Ed. 562
 5 Wall. 785
 KELLY
v.
CRAWFORD.
 December Term, 1866
 
 On error to the Circuit Court for the Northern District of Illinois; the case was thus:
 Crawford & Co., in 1860, were coal dealers in Cleveland, and at the same time Kelly & Maher were coal dealers in Chicago. On the 4th August Kelly made a contract with Crawford & Co., the purport of which was, that Crawford & Co. were to supply Kelly & Co. with coal; that the coal was to be furnished at Cleveland; that Kelly & Co. were to advance the freight and insurance; that upon its arrival here they were to dock and sell it, to guarantee the payment of all sales. The contract prescribed the manner in which the proceeds of the sales were to be divided between the parties, and provided that the coal was to remain the property of Crawford & Co.
 On the 13th of September, 1861, there being a large sum of money due Crawford & Co. for coal furnished under the contract, an agreement was made, in substance thus:
 'Know all men, &c., that whereas Kelly & Co. are indebted to Crawford & Co. upon joint account, the exact amount to be ascertained from the books of Kelly & Co. by one G. H. Quigg, under the supervision of the parties to this agreement (the amount so found to be due and owing to be final). In consideration of such indebtedness, &c., the said Kelly & Co. hereby assign to the said Crawford & Co. all the accounts hereunto attached, and marked 'Exhibit A,' together with two wheelbarrow scales [and other chattels personal, specified], and all other accounts due and owing to said Kelly & Co. upon their coal books, except the accounts now enjoined in chancery. Further: that Crawford & Co. are to put the said accounts into speedy collection; and after paying the expenses of collecting, the balance shall be applied to the extinguishment of the debt of said Kelly & Co. to Crawford & Co., as ascertained by the aforesaid G. H. Quigg. It being distinctly understood that the said Quigg is to ascertain the amount due, which the parties hereto now agree is to be the actual amount. Should there be any balance left after collecting the sums herein referred to, the said Crawford & Co. agree to pay the same over to Kelly & Co.; and should the said sum of accounts, and the personal property herein referred to, be insufficient to pay the sum found (hereafter) to be due to Crawford & Co., then Kelly & Co. agree to pay the balance remaining unpaid to Crawford & Co.'
 No 'exhibit' of any kind had been annexed to this contract at the date of its execution, nor was ever afterward annexed.
 Quigg, in September, 1861, along with Mahel, Crawford & Co. supervising what he did, proceeded to determine from the books of Kelly & Co. the amount due Crawford & Co. In doing this he corrected errors and oversights, and made some new entries, and on the 16th of June, 1862, he wrote up a balance of the accounts as they stood on the books at that time; including in it all the accounts that had been entered upon the books by him subsequent to the agreement. Acting thus, he reported, in June, 1862, the sum due to be $5474.
 Kelly & Co. having failed to pay the amount thus found, Crawford & Co. brought assumpsit in the court below against them.
 The declaration consisted of one special count on the agreement, and the award of Mr. Quigg, thereunder. It set forth that the accounts had been put into collection, and that there was a deficit. The common counts were added.
 To this declaration Maher pleaded:
 1st. General issue.
 2d. That he did not execute the agreement set out in first count of the declaration.
 3d. That the agreement so set out was executed by Kelly, in the name of Kelly & Co., without his knowledge or consent, and that long before the date thereof, the firm of Kelly & Co., of which he had been a member, was dissolved.
 On the trial, the contract between the parties of September 13th, 1861, was admitted by the court in evidence, 'subject to the proof to be given thereafter,' without the exhibit to which it refers, against two objections of the defendants—1st, that it was incomplete without the exhibit; 2d, that it was invalid, because executed by one of the firm of Kelly & Co., after its dissolution.
 Quigg was examined as a witness in the case, and exhibited the books, and testified that the entries made by him, and the balance the books showed, were accurate.
 
 Mr. D. C. Nichols, for Kelly & Co., plaintiffs in error:
 
 1. The contract without the schedule was incomplete—a contract with its most important part omitted—and did not tend to show the case between the parties. Their rights, under the contract, depended upon the accounts assigned. The accounts were to be put into speedy collection. The first count of the plaintiffs' declaration alleges that this was done. If more was collected than Quigg should award, the plaintiffs were to pay the balance to the defendants below; if less, the defendants below were to make up the deficiency. The contract without the schedule had no certain meaning.[1] The absence of the schedule made a patent ambiguity which cannot be supplied by parol evidence.[2]
 If this contract could have been rendered competent by extrinsic evidence, that evidence should have been first introduced, before the contract was received in evidence.[3]
 2. By the contract of September 13th, 1861, Quigg was to determine the balance due the plaintiffs from the defendants as shown by the books at the time they were submitted to him. Instead of so finding the balance he changed the books; introduced new and original matter in them, and in making up the balance-sheet included this matter. In doing this he exceeded the submission.
 Now, an award not in pursuance of the submission, or based upon matters not submitted, is void.[4]
 
 Mr. Merrick, contra:
 
 The court is now asked to reverse this judgment, not because of any injustice done the defendants, or that the judgment and finding of the jury are not fully supported by the pleadings and proofs in the case, or that the jury were in anywise misled by the direction of the court, or would not be justifiable in coming to the same conclusion under any aspect of the case consistent with the facts, or that substantial justice has not been done to the defendant; nothing of the kind is assigned for error. On the contrary, there being no errors assigned in this court, the plaintiffs in error substantially admit that the defendants in error made out their case. The allegation is that the court erred technically in permitting the defendants in error to introduce and read in evidence to the jury, the contract of September 13th, 1861, and the books of Kelly & Co. There is really nothing else. There was no substantial error in what was done, and none even in a technical view. There was no dispute about anything. Quigg was not an arbitrator; but was a mere accountant, fixed on to find the sum due on the books of Kelly & Co.
 Mr. Justice FIELD delivered the opinion of the court.
 
 
 1
 On the trial of this cause the agreement of September 13th, 1861, was admitted in evidence, without the exhibit to which it refers, against two objections of the defendants: 1st, that it was incomplete without the exhibit; 2d, that it was invalid, because executed by one of the firm of Kelly & Co. after its dissolution.
 
 
 2
 The answer to the first objection consists in the fact that no exhibit, though mentioned in the agreement as annexed to it, was in truth annexed. The parties executed the agreement, and acted upon it without this document being attached. The agreement cannot, therefore, be treated as incomplete in the absence of the exhibit; it was only ineffectual to pass the amounts specified in that paper; it was effectual to pass all other matters mentioned. The contract was not intended merely to transfer certain assets; it had for a further object to ascertain the amount of the indebtedness of the defendants from the examination of their books by an accountant. It was clearly admissible in connection with the statement of the accountant to show the amount of such indebtedness.
 
 
 3
 To the second objection the answer is equally brief and conclusive. The agreement was admitted, 'subject to the proof to be given thereafter,' and it was subsequently proved that the agreement was ratified by the other partner of the firm of Kelly & Co., and the fact of ratification is specially found by the jury.
 
 
 4
 The principal objections urged for a reversal of the judgment rest upon the idea that the agreement of September 13th, 1861, was a submission to arbitration, and the report or statement of Quigg was the award of an arbitrator; and that both are to be judged by the strict rules applicable to arbitrations and awards. This is, however, a mistaken view of the agreement and report. As observed by counsel, there was no dispute or controversy between the parties to be submitted to arbitration; nor was anything to be submitted to the judgment or discretion of Quigg. The books of account of the defendants were to determine the amount due; about these there was no controversy. The only duty of Quigg was to examine them as an accountant and to state what they exhibited.
 
 
 5
 The objection that the report was not made from the accounts as they stood on the books at the time they were placed in the hands of Quigg, is not one which can affect the result. The object of submitting the books to him for examination was to ascertain the exact amount of the indebtedness of the defendants to the plaintiffs. For this purpose it was in his power to write up the books, to correct errors discovered, and make entries of what had been omitted by oversight or mistake. It is to be presumed that the parties desired to arrive at a just result, not to have a balance struck from the books without regard to their correctness. The agreement provides that the amount due was to be ascertained by Quigg, under the supervision of the parties, and the proof shows that this was done under the immediate supervision of one of the defendants.
 
 
 6
 Besides, Quigg was examined as a witness in the case, and exhibited the books, and testified as to the balance they showed and the entries made by him. These books were, of themselves, admissible as evidence of the balance due by the defendants, independent of the agreement of September 13th, 1861. Upon the evidence they furnished, taken in connection with the testimony of Quigg, the verdict of the jury may be sustained without reference to his report. They showed the amount received from the sales of coal furnished to the defendants to which the plaintiffs were entitled; and for such amount the recovery can be upheld under the common counts, for money had and received.
 
 
 7
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 Dennis v. Barber, 6 Sergeant & Rawle, 425; Sloan v. Ault, 8 Clark (Iowa), 229; Shields v. Henry, 31 Alabama, 53; Miller v. Travers et al., 8 Bingham, 244 (21 English Common Law, 524); Jackson v. Parkhurst, 4 Wendell, 369.
 
 
 [2]
 Gilson et al. v. Gilson, 16 Vermont, 468.
 
 
 [3]
 Haswell v. Bussing, 10 Johnson, 128; Penfield v. Carpender, 13 Id. 350; Irvine v. Cook, 15 Id. 239.
 
 
 [4]
 Pope v. Brett, 3 Williams's Saunders, 292; Harvey v. Aston, Willes, 92; George v. Lousley, 8 East, 13; Leggo v. Young, 81 English Common Law, 625; Shearer v. Handy, 22 Pickering, 417.