## WILLISTON, RESPONDENT, *v.* CAMP ET AL., APPELLANTS.

PLEADING—*Amendment.*—It is not error for the court to allow an amendment to a pleading after the evidence is in, in order that the allegations may correspond with the proofs adduced, where such amendment does not change the nature of the action or mislead the adverse party to his prejudice.

PARTNERSHIP—*Dissolution—Assignment.*—Where partners made an assignment for the benefit of creditors, and afterwards executed a note in the firm name, which act was followed by a formal dissolution, *held,* that the assignment suspended but did not dissolve the copartnership, and the firm was liable upon the note.

*Appeal from Third Judicial District, Yellowstone County.*

The cause was tried before LIDDELL, J., without a jury.

## STATEMENT OF THE FACTS.

The plaintiff Williston sued the defendants as copartners on a promissory note for $3,000, which the complaint alleges the defendants executed on the fifteenth day of January, 1887, payable to the order of the Williston-Camp Company, a corporation, one day after date, with one per cent interest per month, and attorney's fees if collected by suit. The plaintiff sues as the assignee of the note. The answer is a denial of indebtedness or any liability on the part of defendants on said note, and a denial that the firm of Camp Bros. ever executed the note. The answer further sets up as an affirmative defense the allegation or fact that the defendants, Camp Bros., on thh 9th of July, 1881, made a general assignment of all their property, both real and personal, to David C. Porter for the benefit of creditors; that possession was taken of said property under said assignment; that thereafter the firm of Camp Bros. ceased to do or transact any further business as a firm, and that by virtue of the assignment, and the acts done under it, the partnership theretofore existing between the defendants was dissolved; that the note in question was executed long after such dissolution, and though executed in the firm name by Charles D. Camp, one of the members of the former firm of Camp Bros., it was not done by authority of his former copartners, and they are not bound by his act in signing said note with the firm name. The replication is a denial of these allegations as far as relates to a dissolution of the firm at the time of the assignment, and the authority of Charles D. Camp to execute the note in the name of the firm. The cause was tried by the court without a jury. In rendering its decision, the court made many special findings of fact, and, as a conclusion of law therefrom, rendered a judgment in favor of plaintiff for $2,373.41 and costs. The difference between the judgment and the amount due on the note was the proceeds of certain collaterals, collected by the plaintiff, delivered with the note at the time of its execution. The claim for attorney's fees called for by the note, and asked

for in the prayer of the complaint, was not allowed for want of proof as to value. After the evidence on both sides had been submitted, the court permitted the plaintiff to amend his complaint to conform to the evidence on his part that the note was given in good faith for $3,000 advanced to Porter, the assignee of Camp Bros., and which was used and applied by him for their benefit, and with full knowledge on their part of the entire transaction. The defendants objected to the allowance of this amendment, claiming that it changed the nature of the action. An exception was taken to the ruling of the court in allowing the amendment. Without reciting at length the various facts found by the court, it will be sufficient, for the purpose of this decision, to state their general purport, which was that the firm of Camp Bros., composed of Edgar B. and Charles D. Camp and S. A. Wallace, on the 9th of July, 1886, made an assignment of all their property to David C. Porter for the benefit of creditors, which trust Porter accepted; that while this trust was in existence, and Porter in possession of the trust property, overtures or negotiations took place between him and the creditors of the firm of Camp Bros., by which the creditors agreed to accept 66⅔ per cent of their claims against Camp Bros. in full discharge and satisfaction therefor; that the assignee lacked at the time $3,000 of enabling him to accept the offer thus made; that the offer was an advantageous one to the firm, or the members of the late firm of Camp Bros., inasmuch as it would save to them several thousand dollars, and release to them valuable property held by the trustee, and which otherwise would have to be applied in payment of their debts; that in the emergency in which they were placed, the members of the firm of Camp Bros. applied to the Williston-Camp Company for the loan of $3,000 to enable them to make this compromise or settlement with their creditors; that the money was lent, and the note in suit executed in consideration therefor; that all the members of the firm of Camp Bros. were present pending the negotiations for the loan of said money, and were fully conversant with the transaction; that the note was executed and delivered, in their presence, in the name of the firm of Camp Bros.; that none of them dissented or objected to its execution, and the funds derived therefrom were used by Porter, the assignee, for the

purpose of settling the indebtedness of the firm, which they also knew; and thereafter he released to the different members of said firm the property remaining in his hands. At the time this was done the defendants formally agreed to a dissolution of the firm of Camp Bros., and articles to that effect were then for the first time signed. The above, with such additional facts as are contained in the opinion of the court, are all that it is deemed necessary to state.

*McConnell, Carter & Clayberg,* for Appellants.

The court erred in holding the defendant Wallace liable upon said note from the findings of fact handed down by him. A general assignment of all the partnership effects is in law, *ipso facto,* a dissolution of the partnership. (*Wells* v. *Ellis,* 68 Cal. 245; Story on Partnership, § 101.) The assignment of one of the partners of his interest in the partnership property works a dissolution. (Parsons on Partnership, p. 431.) The bankruptcy of one of the partners also operates as a dissolution of the partnership. *A fortiori,* a general assignment by all the partners, will, in law, operate as a dissolution of the partnership. (3 Kent Com. 53, 54.) In general, as to the consequences of a dissolution of a copartnership, see 3 Kent Com. 63, and n.; *Bank of Montreal* v. *Page,* 98 Ill. 120; *Palmer* v. *Dodge,* 4 Ohio St. 21; *Wilson* v. *Forden,* 20 Ohio, 89; *Haddock* v. *Crocheron,* 32 Tex. 276; *Curry* v. *White,* 51 Cal. 530; *Smith* v. *Shelden,* 35 Mich. 42; *Pirrin* v. *Keene,* 19 Me. 355; *National Bank* v. *Norton,* 1 Hill, 572; *Mitchell* v. *Ostram,* 2 Hill, 520; *Hamilton* v. *Seaman,* 1 Ind. 185. The effect of a voluntary dissolution of partnership is to revoke the agency of each partner, except so far as it may be necessary to wind up the partnership affairs. (*National Bank* v. *Norton,* 1 Hill, 575; *Hamilton* v. *Seaman,* 1 Ind. 185.) There is no finding of facts in the record which, in law, shows that Wallace ever gave Charles Camp authority to bind him by the use of the firm name in the execution of the note sued on. It is not pretended that Wallace knew the contents of said note, or that he authorized the firm name to be signed thereto; but the court, as a conclusion of law, from his bodily presence when the note was executed, and his failure to enter any protest or dissent to the use of the firm name, finds that he " may be

said to have empowered Charles Camp to sign the firm name." Such finding is wholly insufficient to meet the requirement of law. (*Galliott* v. *Pl. & Mech. Bank,* 1 McMull. 209; 36 Am. Dec. 256; *Bell* v. *Morrison,* 1 Peters, 370; *Le Roy* v. *Johnson,* 2 Peters, 186.)

*E. N. Harwood,* for Respondent.

The amendment of the complaint was made by leave of the court at the trial, before the cause was submitted, to conform to the evidence introduced and proved on the trial. The power of the trial court to allow an amendment of this nature has been held in not a few Montana cases, with none to the contrary. (*Wormall* v. *Reins,* 1 Mont. 627; *Hartley* v. *Preston,* 2 Mont. 415; *Hershfield* v. *Aiken,* 3 Mont. 442; *Randall* v. *Greenhood,* 3 Mont. 506; *Ramsey* v. *Cortland Cattle Co.* 6 Mont. 498.) A general assignment of all the partnership effects is not in law, *ipso facto,* a dissolution of the partnership, as contended by appellant. (*Pleasants* v. *Meng,* 1 Dall. 380; Story on Partnership, §§ 97, 325, 326, and notes; Parsons on Partnership [3d ed.], pp. 420, 421, 422, 423; Gow on Partnership, 253; 1 Parsons on Notes and Bills, 144.) The case cited by appellant (*Wells* v. *Ellis,* 68 Cal. 245) is a case for accounting between partners, and not in point. The relation of partners between themselves is viewed differently in law than between the firm and a creditor thereof seeking to recover his just debt. (*Manville* v. *Parks,* 7 Colo. 128.) The power of a partner to bind the firm after dissolution on transactions for settling up the affairs of the partnership is affirmed in the leading case of *Estate of Davis and Desauque,* 5 Whart. 530; 34 Am. Dec. 574. (See, also, *Houser* v. *Irvine,* 3 Watts & S. 345; 38 Am. Dec. 768; *Brown* v. *Higginbotham,* 5 Leigh, 583; 27 Am. Dec. 618; Parsons on Partnership [3d ed.], pp. 420, 421, 422, 423; Story on Partnership, § 17, and notes, §§ 325, 326, and notes; Gow on Partnership, 253; *Graves* v. *Merry,* 6 Cowen, 701; *Smith* v. *Hill,* 45 Vt. 90; *Cane* v. *Battle,* 3 La. An. 642; *Prudhomme* v. *Henry,* 5 La. An. 700.)

Leaving that view of the case, we assert on behalf of the respondent that the defendants all stood by and expressly negotiated the transaction involved in this action, and accepted and carried away the fruits and profits of it. It seems clear, under

the authorities cited, and the findings of fact in this action, that the defendants would be liable as partners for the repayment of said three thousand dollars, if they had never been partners before. They formed a partnership then and there by jointly negotiating the transaction and sharing the fruits and profits of the same. What more is necessary under the law to constitute a partnership? An agreement that something shall be attempted with a view to gain, and that the gain shall be shared by the parties to the agreement, is the grand characteristic of every partnership, and is the leading feature in every definition of the term. (See Ewell's Lindley on Partnership, parts 1, 2, 3, where many definitions are collected; 2 Bouvier's Law Dict. 367; *Randolph* v. *Peck*, 1 Hun, 138; *First Nat. Bank* v. *Parsons*, 19 Minn. 289; 3 Kent Com. 27.)

DE WOLFE, J.—The first question presented for determination is the correctness of the ruling of the court in permitting the amendment of the complaint, after the evidence was all in, so as to make the complaint correspond with the proofs adduced. This the defendants allege as error, claiming that the amendment changed the nature of the action from one on a promissory note to an action for money loaned, or money had and received, and the amendment called for an answer different from that made to the action on the note. The objection we think specious, rather than real. The amendment asked and granted did not, in our view, change the nature or character of the action. It remained after as well as before one upon the promissory note. The court must have found from the evidence that the defendants were liable upon the note; otherwise it could not have rendered judgment against them. Any doubt as to this is set at rest by the facts which the court actually found and filed in the cause. In one view, the amendment may appear immaterial. If the defendants borrowed the money, and executed their note therefor, the use which they made of the money is no doubt unimportant as affecting their liability to repay it. While this is so, we hold that it was not error in the court to permit an amendment, the effect of which was only to show that the defendants received the benefit of the consideration for which they had executed their note. Besides, our statute is very liberal in the

allowance of amendments. The Code of Civil Procedure (§ 112) provides: "No variance between the allegations in a pleading and the proofs is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." We do not think the amendment in this case could properly mislead or injure the defendant in maintaining his defense on the merits; and the decision of the court, from the facts found, must have been the same, whether the amendment had been allowed or not.

We come next to the consideration of the main question involved in this appeal, which is as to the liability of the defendants on the note sued on in this action. In other words, was it the note of the defendants? The answer to this involves the determination of two other questions. One is, did the assignment made by the defendants on the ninth day of July, 1886, operate, *ipso facto*, as a dissolution of the firm from that date? If it did, it gives rise to the other question, which is, did Charles D. Camp have authority from his former partners to execute the note in the firm name, or did they afterwards ratify his act by their words or conduct, or both ?

The authorities generally lay down the proposition that a partnership continues in a qualified or limited sense after dissolution; but this, for the purpose only of settling its affairs, collecting its demands, and paying its debts; that for this purpose the persons composing the partnership continue as agents of the partnership, and, unless restricted by agreement among themselves, one of the former partners has the same power in this respect after as before a dissolution of the partnership. But the power is limited to a settlement of past transactions, and does not extend to the formation of new contracts, nor to change the nature or form of existing contracts. Chancellor Kent lays down the principle in the following clear and succinct form: "The power of one partner to bind the firm ceases immediately on its dissolution, provided the dissolution be occasioned by death or bankruptcy, or by operation of law; though, in cases of a voluntary dissolution, due notice is requisite to prevent imposition on third persons who might continue to deal with the firm. The partners from that time become distinct persons, and tenants in common of the joint stock. One partner cannot

indorse bills and notes previously given to the firm, nor renew a partnership note, nor accept a bill previously drawn on it, so as to bind the firm. He cannot impose new obligations upon the firm, or vary the form or character of those already existing." (3 Kent Com. 63.) The principle here laid down is uniform, and further reference to authority is unnecessary.

On the question whether a general assignment for the benefit of creditors necessarily and of itself works a dissolution of a partnership, the authorities are somewhat scant, and less conclusive. In the present case the court found as a fact that the firm of Camp Bros. was not dissolved by the execution of the assignment in July, 1886; but the persons composing the firm agreed upon and signed articles of dissolution after the execution of the note, and during the same meeting or interview. In the absence of evidence to the contrary, all presumptions of law are in favor of the findings made by the court. If the firm of Camp Bros. was dissolved before that time, it must have been done by operation of law, and not by the act—at least, not by the intention—of the partners; for evidently they regarded themselves as partners up to that time, or they would not then have agreed upon and signed articles of dissolution.

Judge Story, in his work on Partnership, in discussing the power of one partner to make a general assignment for the benefit of creditors, questions the authority to do so, and gives as a reason that such a power "would seem to amount of itself to a suspension or dissolution of the partnership." (Story on Partnership, § 101.) When we analyze this language, we are not certain that the author intended to lay down any absolute and fixed rule that a general assignment for the benefit of creditors, *ipso facto*, operated as a dissolution of a partnership; otherwise he would not have said that such an assignment operated as a "suspension or dissolution" of a partnership. There is a vast difference between the dissolution of a partnership and a mere suspension in the conduct of its business or operations. The terms are not synonymous, and it cannot be that they were used by so accurate a writer as Judge Story in the same sense. He, no doubt, intended just what he said; and, applying his language to the facts of this case, it may be correctly said that the assignment made by Camp Bros., on the 9th of July, 1886,

"suspended" the business of that firm, without saying that it dissolved the copartnership. Partnership results from contract; and its dissolution, when not brought about by death, bankruptcy, or some operation of law, rests in the same source—the will or action of the partners themselves.

It would not be difficult to imagine cases where partners might desire and intend to continue a partnership between themselves after a general assignment of all property, and without entering into new articles, or making any new agreement as to the future; and if parties should so act and treat each other, and so deal with others, it would be rather a continuation of than the formation of a new partnership. This view of the nature of a partnership, and the causes which operate as a dissolution, is not without authority for its support. In the case of *Pleasants* v. *Meng*, decided by the Supreme Court of the United States at an early day, the court, speaking on the effect of a general assignment as affecting a dissolution, says: "Where there is no express agreement to make the dissolution, the assignment can only be considered as circumstantial evidence of it, which the defendant is at liberty to repel by contrary proof." (*Pleasants* v. *Meng*, 1 Dall. 380.) In a very recent work on the subject of partnership, the author says: "An assignment for the benefit of creditors is not necessarily a dissolution of the partnership, but is *prima facie* evidence of dissolution." (Parsons on Partnership, § 132.) This we believe a more reasonable, and therefore correct, rule than the one which holds that an assignment, *ipso facto*, in all cases, operates as a dissolution. It has, however, been held in California that a general assignment operated as a dissolution. (*Wells* v. *Ellis*, 68 Cal. 243.) The same doctrine was held in Maine in the case of *Simmons* v. *Curtis*, 41 Me. 375; but the question was not directly involved, and its decision was, in part at least, *dictum* of the court. The case of *Bank* v. *Horn*, 17 How. 157, referred to in the California case, is not an authority to the point.

Whatever may be the correct rule on this, there is no doubt upon the other proposition, that after dissolution the partners may delegate to one of their number the authority to execute a note in the name of the former partnership, or they may ratify the act when done, and, if they do either, the firm becomes

bound. If they do both, it follows, *a fortiori*, they are likewise bound. In the present case the court found, as matters of fact, that the defendants were all present when the note was given, and all knew of its execution, and the object and purpose for which it was done; also that they received the benefit of the proceeds by the relinquishment of property which would otherwise have been applied in payment of the debts of the firm. It is impossible to doubt, therefore, but what there was both a delegation of authority to the partner who executed the note, and a ratification of his act after it was done. Numerous authorities could be cited which uphold this proposition, and no authority has been found to the contrary. We refer only to the following: *Eaton* v. *Taylor*, 10 Mass. 54; *Kelly* v. *Crawford*, 5 Wall. 785; *Simmons* v. *Curtis*, 41 Me. 375.

In every view taken of this case, we are of opinion that the judgment of the District Court should be affirmed, with costs, and it is so ordered.

BLAKE, C. J., and BACH, J., concur.