Summers, J.
In Phoenix Insurance Company v. Carnahan, 63 Ohio St., 258, it is held that, “A condition in a policy of insurance against fire, that in case of loss and a disagreement or difference between the parties as to the amount of the loss, that amount shall be ascertained by arbitration or appraisal, is a proper and valid condition; and where it is also provided that the condition as to arbitration or appraisal must be complied with before a suit can be brought against the insurer, the condition is thereby made a condition precedent, and to entitle the insured *282 to maintain an action to recover under the policy, he must show that he has either performed the condition or has a legal excuse for non-performance thereof.” To the same effect is Graham v. The German American Insurance Company, 75 Ohio St., 374.
The provision in the policy in the present case is identical. It does not appear by the petition that the parties disagreed as to the amount of the loss, but the plaintiff, as he may do under the code, Section 5091, Revised Statutes, averred , that he had performed all the conditions on his part, and when the defendant pleaded the disagreement as to the amount of the loss, the submission to and the determination of that question by the appraisers, and the provision of the policy as to concurrent insurance, in the absence of a reply, the amount that plaintiff might recover was limited to a proportionate amount of the loss so determined by the' appraisers, and he could not recover a larger amount until he got rid of the appraisement. This he might do, if it was void, by a reply pleading its invalidity; but if the plaintiff could not -aver facts that made the appraisement void, but only facts that made it voidable, he should in his petition have united a cause of action to set aside the appraisement. Perry v. The M. O’Neil & Co., 78 Ohio St., 200.
The plaintiff in his reply avers that the appraisal- is illegal, void and of no effect, but as this is not based upon a statement of facts it is merely a legal conclusion, and the many facts thereafter averred would, if proven, only make the appraisement voidable.
The reply tendered a new issue and was a departure. No objection, however, was made and, after the evidence was in, the trial judge properly *283 held that this issue was not for the jury but for the court.
The remaining contention is, that the policy of insurance does not provide for an arbitration, but only for an appraisal of the property to determine the amount of the -loss, and that it was not the duty of the appraisers to hear evidence, but that they might each for himself and in his own way, ascertain the value of the property destroyed, and that the court erred in setting aside the award.
Since the decision in the leading case Scott v. Avery, 5 H. L. Cases, 811, followed in Hamilton v. The Liverpool and London and Globe Insurance Company, 136 U. S., 242, and Hamilton v. Home Insurance Company, 137 U. S., 370, it has been settled that a provision in a policy of insurance that the amount of damage or loss- shall be submitted to arbitration or appraisement and that suit shall not be brought until after an award has been made is valid.
The distinction between an agreement for appraisement and an agreement to submit to arbi- i t'ration may not always be plain. But when the question of the liability of the company under the policy, and every other question is reserved, and the only submission provided for is an appraisal of the property at and after the time of the fire to determine the single question of the amount of the loss, it would seem to be an agreement for an appraisement and not an arbitration. In Fleming v. Phoenix Assurance Company of London, 75 Hun, 530, where the policy contained an identical provision, Dykman, J., says: “They are appraisers and not arbitrators. Their function is to estimate and appraise the loss by personal examination and observation. They have *284 no power or authority to take testimony, and their doing so is not contemplated.” We' think this must have been what the parties contemplated, and if ■ it was intended that the single question of the amount of the loss should be determined by an arbitration, and not by appraisal by appraisers, that the agreement should have so provided.
In Wadsworth v. Smith, L. R., 6 Q. B., 332, where the question was, whether a stipulation, that the certificate of an architect as to a particular matter should be final was an agreement for a submission to arbitration, Blackburn, J., says: “Where by an agreement the right of one of the parties to have or do a particular thing' is made to depend on the determination of a third person, that is not a submission to arbitration, nor is the determination an award; but where there is an agreement that any dispute about a particular thing shall be inquired of and determined by a person named, that may amount to a submission to arbitration, and the determination, though in the form of a certificate, be an award.” In Kelly v. Crawford, 5 Wall., 785, where some^ thing was owing from an agent to his principal, it was agreed that an accountant, named, should ascertain from the books of- the agent the exact amount, and that the amount so ascertained should be final, it is said by. Mr. Justice Field: “The principal objections urged for a reversal of the judgment rest upon the idea that the agreement of September 13, 1861, was a submission to arbitration and the report or statement of Quigg was the award of an arbitrator; and that both are to be judged by the strict rhles applicable to arbitrators and awards. This is, however, a mistaken view of the agreement and report, As observed by counsel, there was no dispute *285 or controversy between the parties to be submitted to arbitration; nor was anything to be submitted to the judgment or discretion of Quigg. The books of .account of the defendants were to determine the amount due; about these there was no controversy. The only duty of Quigg was to examine them as an accountant and to state what they exhibited.” The mere fact of a difference between the parties as to the amount of the loss we do not think makes the submission an arbitration, if an agreement to submit that question to appraisers in the absence of a difference between the parties as to the amount of the loss would not have amounted to an agreement for a submission to arbitration.
In DeGroot v. Fulton Fire Insurance Company, 4 Rob. (N. Y.), 504, where there was an agreement that two persons named, with a third person to be appointed by them, should appraise and estimate at the true cash value, the damage by fire and water to the property insured and that the appraisement and estimate of any two of them in writing as to the amount of such damage should be binding on both parties, without reference to any other matters of difference between them, it is held that, “The value of articles insured may be determined by appraisers appointed under a policy of insurance merely to estimate the damage by a peril insured against in such mode as they think proper. They are not bound by the same rules of strict judicial investigation as arbitrators.”
This case and Fleming v. Phoenix Assurance Company of London, 75 Hun, 530, supra, are cited with approval in Strome v. London Assurance Corp., 20 App. Div. (N. Y.), 571, which is affirmed without report in 162 N. Y., 627.
*286 The above cases are cited with approval in Kaiser v. Hamburg-Bremen Fire Insurance Company, 59 App. Div. (N. Y.), 525, and in the opinion by Laughlin, J., it is said: “Notwithstanding the observation of the court in Fleming v. Phoenix Assurance Co. (supra), to the effect that insurance appraisers are not authorized to take evidence, it would seem that as to items of property wholly destroyed or otherwise not visible or open to inspection, the appraisers must act upon information or evidence, for otherwise they could not make a just estimate of the loss. We think it is a fact that may be taken judicial notice of that it is usual and customary for the owner or his representative to make statements to the appraisers, and their failure in this instance to listen to such statements is some evidence in support of the contention that Vanderwerf was not an unprejudiced, unbiased and disinterested appraiser.” In Liverpool and London and Globe Insurance Company v. Goehring, 99 Pa. St., 13, where an appraisal was made under a somewhat similar agreement, it is said in-the opinion: “These arbitrators or appraisers were chosen by the parties under an agreement in writing duly and deliberately executed, and by the terms of that agreement they were to appraise and estimate the true cash value of the loss. They were chosen because they were practical builders, and were expected to make their own estimates, and from these estimates form their judgment.
“Therefore, that they went to a planing mill to ascertain the price of lumber, and to a tinsmith to learn the price of roofing tin, so far from being evidence of misconduct, was proof of care and consideration- — -of a disposition to inform themselves of the ruling prices of the materials that *287 had composed the building. They examined the ruins, took what measurements were necessary, listened to what information Goehring had to give them, received from him a plan of the building, and, if he is to be believed, he put into their possession an estimate made for him by Greenawalt, an act that looks more like an attempt to improperly influence the arbitrators than'any other in the case. Then, after they got all the information they thought necessary, and they were the sole and exclusive judges of what was necessary, they retired to a room in the hotel, and there by themselves, both parties being excluded, they made their estimate and award,” and it was held that the appraisers were not guilty of the slightest misconduct.
In Zallee v. The Laclede Mutual Fire and Marine Insurance Company, 44 Mo., 530, it is held that “Where the stipulations of a fire insurance policy have actually been complied with, and appraisal of losses had in conformity thereto, the insurance company and the insured should be bound by the result, notwithstanding that the appraisers were not sworn. They acted as appraisers, and not as arbitrators. The reference to them was not a submission to arbitration, in a legal sense, for the purpose of settling and extinguishing a cause of action, but a just and reasonable mode of fixing values — the value of the injured goods before and after the fire, the difference representing the amount of loss or damage.”
The court erred, therefore, in setting aside the appraisement on the ground that the insured was not given a hearing.
The agreement does not provide that the appraisers and the umpire shall be experts, and there is no evidence warranting the finding that they *288 were incompetent. They were to be competent and disinterested and the evidence fails to show that they were not. There is room for suspicion that the appraiser selected by the insurer was partisan and conceived it to be his duty to obtain a low estimate, but the proof does not show either misconduct or interest. The insured interviewed several persons with a view to the selection of one of them as umpire, and the appraiser learning this may have, merely from a sense of duty, urged the selection of the umpire from Toledo, and the other appraiser after proper inquiry joined in the selection. The appraisers together ■ inspected what was left of the property, old junk or salvage they termed it, and agreed as to its value. The umpire was only required to appraise what they could not agree upon, and as what they did not agree upon was not in existence, his failure to inspect the place of the fire did not warrant the court in setting aside the appraisement.
The insured had submitted to an' examination, as provided in the policy, and this examination was read by the appraiser appointed by the company, and by him submitted to the other appraiser and to the umpire, and it is contended that this was misconduct warranting the setting aside of the appraisement. This examination went at length and in detail into the character and value of the property destroyed, and to that extent at least must be presumed to have been in the interest of the insured, but it is said that it also related to the origin of the fire and tended to cast suspicion upon the insured, and it is said that it was brought to the attention of the umpire for that purpose by the appraiser. This, however, is denied by the appraiser, and under the circumstances the burden being upon the insured, we do not think the evi *289 dence warranted the setting aside of the appraisement.
The parties agreed upon this manner of determining the loss. The burden was on the plaintiff to prove grounds for setting it aside, and having failed in this it must stand, and there being corn-current insurance as stated, the plaintiff can recover only the amount tendered, and the judgments will be reversed.

Reversed.

Crew, C. J., Spear, Davis and Shauck, JJ., concur.