## CITY OF OMAHA *v.* OMAHA WATER COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 159.  Argued April 19, 1910.—Decided May 31, 1910.

In the absence of any provision in the submission, the award of arbitrators or appraisers must be unanimous in matters of private concern, but a majority can act when the matter submitted is one which concerns the public.

The fact that public affairs are controlled by majorities is probably the basis of the above rule although the reason for the distinction therein contained is not altogether clear.

The purchase by a municipality, under authority and direction of the legislature of the State, of a water supply system, and the determination of the price to be paid for an existing plant are matters of public concern.

There is a distinction between an arbitration and an appraisal of value and although arbitrators may not independently take testimony as to disputed facts appraisers may, as in this case, properly examine books and papers relating to the property, in the absence of counsel, without being guilty of misconduct; and, in the absence of bad faith, such examination will not vitiate the award.

The legislature of a State may authorize a municipality to purchase a water system which extends beyond the city limits and to supply water to adjacent sections; and so *held* that the city of Omaha has such right, and that an appraisal of a water system is not bad, and hence not binding on the city, because it includes the entire system, parts of which are beyond the city limits.

There is a presumption against an intent to dismember a complete waterworks system, and an ordinance to purchase such a system will not be construed as requiring such dismemberment, even if the city had no power to use certain portions of the system.

Cost of duplication, less depreciation, of a water system, is less than the commercial value of the system as a going concern; and, even though the value of the unexpired franchise be expressly excluded from the appraisal, where the parties contemplate the purchase of a complete water system in operation, a reasonable amount should be included in the appraisal for the "going value" over the value of the physical properties.

A transaction of great magnitude such as the purchase by a city of a water supply system will not be defeated because of minor obstacles; and if the deed tendered includes a few properties to which title is not perfect or if there are incumbrances on the properties, the court can bring the proper parties in and the deed can be modified and interests protected so as to carry out, and not defeat, the transaction.

THE facts are stated in the opinion.

*Mr. John Lee Webster*, with whom *Mr. Carl C. Wright* and *Mr. Harry E. Burnam* were on the brief, for petitioner:

The award is void because not concurred in by the three appraisers. The election to purchase contemplated the valuation to be ascertained by all three appraisers.

The fact that each party selected an appraiser, and these two the third appraiser, does not give the right by implication or otherwise, to two appraisers alone to make an award, and one so made is void. *Willis* v. *Higginbotham*, 61 Mississippi, 164; *Harvin* v. *Denton*, 87 Mississippi, 238; *Weaver* v. *Powel*, 148 Pa. St. 372; *Lowe* v. *Brown*, 22 Ohio St. 463; *Stose* v. *Heissler*, 120 Illinois, 433; *Sherman* v. *Cobb*, 10 Atl. Rep. 591; *Memphis & Charleston Ry. Co.* v. *Pillow*, 56 Tennessee, 248; *Jeffersonville Ry. Co.* v. *Mounts*, 7 Indiana, 669; *Patterson* v. *Leavitt*, 4 Connecticut, 50; *United Kingdom &c.* v. *Houston*, 1 Q. B. L. R. 567.

The contract of submission will be construed as requiring the award to be concurred in by all the appraisers or arbitrators, unless by express words or necessary implication it authorizes an award by less than all. *Richards* v. *Holt*, 61 Iowa, 529; *Hubbard* v. *Great Falls Mfg. Co.*, 80 Maine, 39; *Lowe* v. *Brown*, 22 Ohio St. 463; *Godfrey* v. *Knodle*, 44 Ill. App. 638; *Oakley* v. *Anderson*, 93 N. C. 108; *Mackey* v. *Neill*, 53 N. C. 214; *Anderson* v. *Farnham*, 34 Maine, 161; *Owens* v. *Withee*, 3 Texas, 161; *Stose* v. *Heissler*, 120 Illinois, 433; *United Kingdom &c.* v. *Houston*, 1 Q. B. L. R. 567.

All must concur in the award to make it valid unless the parties have agreed that it may be made by less than all. Unless there is such an agreement clearly and unmistakably expressed the award will be held void when signed by two and not concurred in by the third. *Leavitt* v. *Windsor*, 54 Fed. Rep. 439; *Harryman* v. *Harryman*, 43 Maryland, 140; *Byrd* v. *Harkrider*, 108 Indiana, 376; *Willis* v. *Higginbotham*, 61 Mississippi, 164; *Weaver* v. *Powel et al.*, 148 Pa. St. 372; *Eames* v. *Eames*, 41 Connecticut, 177; *Towne* v. *Jaquith*, 6 Massachusetts, 46; *Green* v. *Miller*, 6 Johns. 39; *Patterson* v. *Leavitt*, 4 Connecticut, 50; *Nettleton* v. *Gridley*, 21 Connecticut, 531; *Jeffersonville Ry. Co.* v. *Mounts*, 7 Indiana, 669; *Smith* v.

*Waldon,* 26 Georgia, 249; *Lattin* v. *Gamble,* 154 Michigan, 177.

This case is distinguishable from one where the terms of the submission provide that a third party is an umpire, to be selected in the event of a disagreement. The submission in case at bar does not make the third man an umpire. *Sherman* v. *Cobb,* 10 Atl. Rep. 591; *Lowe* v. *Brown,* 22 Ohio St. 463; *Jeffersonville Ry. Co.* v. *Mounts,* 7 Indiana, 669; *Stose* v. *Heissler,* 120 Illinois, 433; *Godfrey* v. *Knodle,* 44 Ill. App. 638.

The case at bar is not a public appraisement which would justify an award by a majority of the appraisers. Such rule only prevails in cases of international controversies, or where the appraisers are appointed under a public law of the State and are acting in a public or *quasi*-judicial capacity.

Contracts between cities and water and gas companies are business contracts between private individuals. *Omaha Water Co.* v. *City of Omaha,* 147 Fed. Rep. 1; *Wagner* v. *City of Rock Island,* 146 Illinois, 139; *Illinois Trust Co.* v. *Arkansas City,* 76 Fed. Rep. 271; *Appeal of Brum,* 12 Atl. Rep. 855; *Safety Ins. Wire & Cable Co.* v. *Mayor,* 66 Fed. Rep. 140; *Cincinnati* v. *Cameron,* 33 Ohio St. 336.

The cases cited by the Court of Appeals to effect that this appraisement was a matter of public concern do not support that view.

A public appraisement is where the appraisers or arbitrators are appointed under a state or national law and act as *quasi*-public officers in the performance of a public duty. *Grindley* v. *Barker,* 1 Bos. & Pull. 229; *King* v. *Beetson,* 3 Term. 529; *Withnell* v. *Gartham,* 6 Tennessee, 388; *Ex parte Rogers,* 7 Cow. 525; *Sinclair* v. *Jackson,* 8 Cow. 543; *Young* v. *Buckingham,* 5 Ohio, 485; *State* v. *McMillan,* 29 S. E. Rep. 540; *S. C.,* 52 S. C. 60; *Carroll* v. *Alsup,* 107 Tennessee, 271; *Cortis* v. *Kent Water*

*Works*, 7 B. & C. 314; *Cooley* v. *O'Connor*, 12 Wall. 391; *The King* v. *Whitaker*, 9 Barn. & Cress. 648; *People* v. *Walker*, 23 Barb. 304; *People* v. *Coghill*, 47 California, 361; *Hewitt* v. *Craig*, 5 S. W. Rep. 280; *S. C.*, 9 Ky. Law Rep. 232.

The award is void because after the appraisers concluded the formal hearing, they privately and against the protest of the city, received and secretly examined, *ex parte*, the books of the water company, under an understanding that the city should not be permitted to see or know the contents of said books. The question to be considered involves a moral principle. The incident complained of did not give the city a "square deal." Such an examination was misconduct and made the award void. *Catlett* v. *Dougherty*, 114 Illinois, 568; *Emery* v. *Owings*, 7 Gill. 448; *Bassett* v. *Harkness*, 9 N. H. 164; *Jenkins* v. *Liston*, 13 Gratt. 535; *Rand* v. *Peel*, 74 Mississippi, 305; *National Bank* v. *Darragh*, 30 Hun, 29; *Warren* v. *Tinsley*, 53 Fed. Rep. 689; *Cameron* v. *Castleberry*, 29 Georgia, 495; *Walker* v. *Frobisher*, 6 Ves. 69; *Strong* v. *Strong*, 9 Cush. 560; *Hewitt* v. *Reed City*, 124 Michigan, 6; *Vessel Owners' Towing Co.* v. *Taylor*, 126 Illinois, 250; *Elmendorf* v. *Harris*, 23 Wend. 638; *Dobson* v. *Groves*, 9 Q. B. 637; *Western Female Seminary* v. *Blair*, 1 Disney, 370; *In re Plews and Middleton*, 6 Q. B. 845; *In re Tidswell*, 33 Beav. 213; *Passmore* v. *Pettit*, 4 Dall. 270; *Wood* v. *Helme*, 14 R. I. 325; *Jackson* v. *Roane*, 90 Georgia, 669; *Wilkins* v. *Van Winkle*, 78 Georgia, 557; *Rosenau* v. *Legg*, 82 Alabama, 568; *Knowlton* v. *Mickles*, 29 Barb. 465; *Sisk* v. *Gary*, 27 Maryland, 401; *Cleland* v. *Hedley*, 5 R. I. 163; *Lattin* v. *Gamble*, 154 Michigan, 177–181; *Lutz* v. *Linthicum*, 8 Pet. 165; *McFarland* v. *Mathis*, 10 Arkansas, 560; *Eastern Counties Ry. Co.* v. *Eastern Union Ry. Co.*, 68 Eng. Ch. 609.

These cases also hold that the court will not permit an inquiry into the *ex parte* evidence, but will set aside the

award, and it was not necessary for the city to introduce evidence that the arbitrators were improperly influenced by the *ex parte* evidence, but the award will be held to be void, even though it appears that the appraisers were respectable gentlemen, or did not consider the *ex parte* evidence, or were not influenced thereby.

An arbitrator who takes instructions from one side is in law acting corruptly. *Strong* v. *Strong*, 9 Cush. 560; *Western Female Seminary* v. *Blair*, 1 Disney, 370.

The general rule is that valuers of property, although called appraisers, or referees, or commissioners, in receiving evidence and in making awards, are governed by the law relating to arbitration. *Continental Ins. Co.* v. *Garrett*, 125 Fed. Rep. 589; *Christianson* v. *Norwich Ins. Co.*, 84 Minnesota, 526; *Mason* v. *Fire Ins. Assn.*, 122 N. W. Rep. 423; *Hills* v. *Home Ins. Co.*, 129 Massachusetts, 345; *Washburn* v. *White*, 197 Massachusetts, 540; *Insurance Co.* v. *Hegewald*, 161 Indiana, 631; *Manf. Builders' Ins. Co.* v. *Mullen*, 48 Nebraska, 620; *Sherman* v. *Cobb*, 15 R. I. 570; *Lowe* v. *Brown*, 22 Ohio St. 463; *Godfrey* v. *Knodle*, 44 Ill. App. 638; *Stose* v. *Heissler*, 120 Illinois, 433; *Emery* v. *Owings*, 7 Gill. 448; *Redner* v. *N. Y. Fire Ins. Co.*, 92 Minnesota, 306; *Earle* v. *Johnson*, 84 N. W. Rep. 332; *Hart* v. *Kennedy*, 47 N. J. Eq. 51.

The award is void because the appraisers exceeded their authority in appraising and including in the award the sum of $562,712.45 for going value. *Knoxville* v. *Water Co.*, 212 U. S. 1; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 52.

The award includes property the city is without authority to purchase, and used only to supply other towns.

A municipality acts under delegated power and can exercise only such rights and powers as are expressly conferred or necessarily implied from express grants; and all grants of power are to be strictly construed. *Citizens' St.*

*Ry. Co.* v. *Detroit Ry. Co.,* 171 U. S. 48, 53; *City of Fort Scott* v. *Eads Brokerage Co.,* 117 Fed. Rep. 51, 54; *State* v. *Irey,* 42 Nebraska, 189.

Cities have no power to levy taxes for the purpose of maintaining or to own or construct waterworks for the benefit of adjoining municipalities. *Sutherland-Innes Co.* v. *Village of Evart,* 86 Fed. Rep. 597; *Ottawa* v. *Carey,* 108 U. S. 121; *Quincy* v. *City of Boston,* 148 Massachusetts, 389; *Arnold* v. *Pawtucket,* 21 R. I. 15; *Duluth* v. *Gas & Water Co.,* 45 Minnesota, 210; *Farwell* v. *City of Seattle,* 43 Washington, 141; *Town of Bristol* v. *Water Works,* 23 R. I. 274.

The only exception is where there is express statutory authority to that end. *West Hartford* v. *Water Commissioners,* 68 Connecticut, 323; *Pittsburg* v. *Brace,* 158 Pa. St. 174.

A decree of specific performance should not be entered. Such a decree will not be entered where the purchaser would only obtain an equitable title. *Wesley* v. *Eells,* 177 U. S. 37; *City of Tiffin* v. *Shawhan,* 43 Ohio St. 178; *Guild* v. *Atchison, Topeka & Santa Fe Ry.,* 57 Kansas, 70. A court of equity will not decree a specific performance except where the right is clear. *Willard* v. *Tayloe,* 8 Wall. 557, 565; *Hennessy* v. *Woolworth,* 128 U. S. 438, 442; *McCabe* v. *Matthews,* 155 U. S. 550, 553; *Hildreth* v. *Duff,* 148 Fed. Rep. 676.

Although the proof might not authorize the court to set aside the award, it may be sufficient for a court of equity to refuse specific performance. *Shoop* v. *Burnside,* 78 Kansas, 871, 876; *Banaghan* v. *Malaney,* 200 Massachusetts, 46.

The award fixes the value of the property as of the date of the award, while the law requires the valuation to be fixed as of the date of the election to purchase. *Bristol* v. *Bristol,* 25 R. I. 189; *Water Co.* v. *Cherryvale,* 65 Kansas, 219; *Caldwell* v. *Frazier,* 65 Kansas, 24; *Water Co.* v.

*Rockport,* 161 Massachusetts, 279; *C., M. & St. P. Ry. Co.*
v. *Stewart,* 19 Fed. Rep. 5.

Mr. *Howard Mansfield* and Mr. *R. S. Hall,* with whom
Mr. *Herbert C. Lakin* was on the brief, for respondent:

There was no misconduct, improper procedure, con-
cealment or secrecy on the part of the board of appraisers
in the examination of the water company's books, nor
were the books offered in evidence in any technical sense.
The company was entirely within its rights in restricting
the examination of its books to the sole purpose of the
appraisal.

The board of appraisers was not subject to the rules of
procedure governing arbitrations. *Lutz* v. *Linthicum,* 8
Pet. 165; *Bliss* v. *Supervisors,* 15 N. Y. Supp. 748; 1
Words and Phrases, 487, 490; *Garr* v. *Gomez,* 9 Wend.
649, 651; *Hall* v. *Norwalk Fire Ins. Co.,* 57 Connecticut,
105; *Continental Ins. Co.* v. *Garrett,* 125 Fed. Rep. 589.

The subject of the present review is not an arbitration
but an appraisal; and the determination of the matter
submitted to the board of appraisers is not an award, but
an appraisement.

The vital distinction between an arbitration and an
appraisal has been clearly and uniformly recognized from
remote time by the courts. *Leeds* v. *Burrows,* 12 East, 1;
*Lee* v. *Hemingway,* 3 Nev. & M. 860, note to *Parkes* v.
*Smith,* 15 Q. B. 305; *Collins* v. *Collins,* 26 Beav. 306;
*Eads* v. *Williams,* 4 De Gex, MacN. & G. 674; *Bottomley*
v. *Ambler,* 32 L. T. N. S. 545; Fry on Specific Performance,
2d ed., § 341; *Garr* v. *Gomez,* 9 Wend. 649; *Garrard* v.
*Macey,* 10 Missouri, 161; *Curry* v. *Lackey,* 35 Missouri,
389 (1858); *Kelly* v. *Crawford,* 5 Wall. 785; *G. & C. Sts.
Ry. Co.* v. *Moore,* 64 Pa. St. 79; *Palmer* v. *Clark,* 106
Massachusetts, 373; *N. E. Trust Co.* v. *Abbott,* 162 Massa-
chusetts, 148; *Norton* v. *Gale,* 95 Illinois, 533; *Stose* v.
*Heissler,* 120 Illinois, 433; *James* v. *Schroeder,* 61 Michi-

gan, 28; *Noble* v. *Grandin*, 125 Michigan, 383; *M. E. Church* v. *Seitz*, 74 California, 287; *Guild* v. *Railroad Co.*, 57 Kansas, 70; *Wurster* v. *Armfield*, 175 N. Y. 256; *Norwich Gas & El. Co.* v. *Norwich*, 76 Connecticut, 565; *Earle* v. *Johnson*, 81 Minnesota, 472, distinguished; *Colombia* v. *Cauca Co.*, 190 U. S. 524.

The three engineers were, from the outset, regarded by the counsel for both parties, as constituting a board of appraisers and not a board of arbitrators, and by agreement of both parties were given the widest latitude of procedure.

The objection as to the examination of the books comes too late. *Drew* v. *Drew*, 33 Eng. Law & Eq. 9.

The appraisement cannot be set aside, except on positive proof of corruption, partiality or actual misconduct. *Republic of Colombia* v. *Cauca Co.*, 106 Fed. Rep. 337; *Brush* v. *Fisher*, 17 Michigan, 469.

The terms of the contract reserving to the city of Omaha the right to purchase the waterworks necessarily authorized a valuation by a majority of the board of appraisers.

The distinction between appraisements in private and in public concerns is obvious. *Colombia* v. *Cauca Co.*, 190 U. S. 528. The acquisition by a city of a system of waterworks is a matter of public concern. *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685; *Wagner* v. *Rockland*, 146 Illinois, 139; *Minneapolis Mill Co.* v. *Water Commissioners*, 56 Minnesota, 485. See also *Winters* v. *Duluth*, 82 Minnesota, 127; *Water Co.* v. *Eau Clair*, 132 Wisconsin, 411; De Portibus Maris, 1 Harg., Law Tracts, 78; *Munn* v. *Illinois*, 94 U. S. 113. See also *Budd* v. *New York*, 143 U. S. 517; *Slingerland* v. *Newark*, 54 N. J. L. 62; *Kennebec Water District* v. *Waterville*, 96 Maine, 234.

Public policy requires that in a matter of public concern the determination of a majority of the appraisers,

where all meet to consider the matter, must be taken as
the act of the whole. *Grindley* v. *Barker*, 1 Bos. & Pul.
229; *McCoy* v. *Curtice*, 9 Wend. 17; *Cowan* v. *Murch*, 97
Tennessee, 590, 598; *Carroll* v. *Alsup*, 107 Tennessee, 257,
271; *Washington* v. *Nichols*, 52 N. Y. 478; *Green* v. *Miller*,
6 J. R. 39; *Ex parte Rogers*, 7 Cow. 526, 529; *Young* v.
*Buckingham*, 5 Ohio, 485; *Colombia* v. *Cauca Co.*, 190
U. S. 524; *Gas Co.* v. *Wheeling*, 8 W. Va. 320; *St. Paul Gas
Light Co.* v. *St. Paul*, 181 U. S. 142; *Light Co.* v. *Mont-
gomery*, 87 Alabama, 245.

None of the decisions cited by counsel for the city
conflicts with the rule that unanimity is not necessary in
matters of public concern. See *Patterson* v. *Leavitt*, 4 Con-
necticut, 50; *Harryman* v. *Harryman*, 43 Maryland, 140;
*Lowe* v. *Brown*, 22 Ohio St. 463; *Hubbard* v. *Great Falls
Mfg. Co.*, 80 Maine, 89; *Weaver* v. *Powell*, 148 Pa. St. 372;
*Cortis* v. *Kent Water Works Co.*, 7 B. C. 314.

The going value of the company's system of water-
works, as distinguished from the unexpired franchise, is
an integral and essential element of the appraised valua-
tion of the property. *Water Works Co.* v. *Kansas City*,
62 Fed. Rep. 853; *Gloucester Water Supply Co.* v. *Glouces-
ter*, 179 Massachusetts, 365; *Gas & Electric Co.* v. *Norwich*,
76 Connecticut, 565; *Knoxville* v. *Water Co.*, 212 U. S. 1;
*Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, distin-
guished.

The valuation by the board of appraisers was prop-
erly made as far as practicable as of the date of their re-
port.

By the terms of the ordinance of election the scope of
the city's purchase was nothing less than the entire sys-
tem of waterworks owned and operated by the Omaha
Water Company, wherever located.

By the action of the parties, construing the ordinance
with a view to the powers conferred by the statute, the
scope of the contemplated purchase became irrevocably

fixed. It cannot now be altered. *Knox County* v. *National Bank*, 147 U. S. 91; *Manhattan Life Ins. Co.* v. *Wright*, 126 Fed. Rep. 82. See also *District of Columbia* v. *Gallaher*, 124 U. S. 505, 510; *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273.

The city is equitably estopped from now claiming that it has never been its purpose to acquire the entire system of the complainant. *Reynolds* v. *Adden*, 136 U. S. 348; *Hackett* v. *Ottawa*, 99 U. S. 86, 96; *County of Randolph* v. *Post*, 93 U. S. 502, 513; *Bissell* v. *Jeffersonville*, 24 How. 287, 300; *Sullivan Timber Co.* v. *Mobile*, 110 Fed. Rep. 186, 197; *Brooks* v. *Laurent*, 98 Fed. Rep. 647; *Garber* v. *Doersom*, 117 Pa. St. 162; *Munroe* v. *Danbury*, 24 Connecticut, 199; *Tarr* v. *Mayor of Crete*, 32 Nebraska, 568; *Water Co.* v. *Omaha*, 156 Fed. Rep. 922.

An equitable estoppel may arise in such a case, applicable to a municipal corporation as well as to any other corporation or to an individual. *Water Co.* v. *City of Aspen*, 146 Fed. Rep. 8; *Indianapolis* v. *Consumers' Gas Trust Co.*, 144 Fed. Rep. 640; *Fayetteville* v. *Water, L. & P. Co.*, 135 Fed. Rep. 400; cases *supra* and *Peabody* v. *Westerly Water Works*, 20 R. I. 176.

None of the cases cited by counsel for the city is in conflict with this decision.

Upon the exercise of the option the obligation of the defendant to complete the purchase became absolute and the question cannot be raised as to power to purchase. *Castle Creek Water Co.* v. *City of Aspen*, 146 Fed. Rep. 8; *Water Co.* v. *Braintree*, 146 Massachusetts, 482; *Fayetteville* v. *Water, Light & Power Co.*, 135 Fed. Rep. 400; *Ralls County Court* v. *United States*, 105 U. S. 733; *Sala* v. *New Orleans*, 2 Woods, 188.

No valid equitable considerations appear against a decree of specific performance being entered as directed by the Circuit Court of Appeals.

MR. JUSTICE LURTON delivered the opinion of the court.

This is a bill seeking the specific performance by the city of Omaha of a contract for the purchase and sale of the system of waterworks owned by the appellee company. The waterworks plant in question was constructed in pursuance of legislative authority and municipal ordinance, which need not be considered, for neither party questions the sufficiency of either. The fourteenth section of the ordinance of 1880, under which the waterworks were constructed by the predecessor of the appellee, was in these words:

"The city of Omaha shall have the right at any time after the expiration of twenty years to purchase the said waterworks at an appraised valuation, which shall be ascertained by the estimate of three engineers, one to be selected by the city council, one by the waterworks company and these two to select the third: *Provided,* That nothing shall be paid for the unexpired franchise of said company."

In 1903 the city elected to exercise this option and a board of appraisers was appointed, one by each of the parties and a third by the two so selected. This board of appraisers organized and proceeded to take evidence, and, after considering the matter for about three years, made an appraisement, fixing the value of the system at $6,263,295.49. The appraiser appointed by the city did not concur. The city rejected the award. Whereupon the company filed this bill, which, upon final hearing, was dismissed upon the sole ground of misconduct of the appraisers, other objections not being passed upon. Upon appeal this decree was reversed and the cause remanded for a decree in pursuance of the opinion of the appellate court. 162 Fed. Rep. 232.

The case is here upon a writ of certiorari allowed at a former term.

Three major objections have been urged against the appraisement. First, that it was not concurred in by all; second, that the appraisers heard certain evidence without notice or giving the city an opportunity to hear or rebut; and, third, that the property valued includes a distributing system beyond the corporate limits of Omaha, by which certain suburban villages are supplied, and that to that extent the city made no contract to buy, and if it did, had no power to do so.

These in their order:

1. The only matter to be determined was the value of the waterworks system, which had long served the public. Its construction had been authorized by legislative enactment under which the municipal ordinance was passed. One section of this ordinance provided that the city at the end of twenty years might, at its election, purchase the works at a value to be determined by appraisers. The contention is that the refusal of one of the appraisers to concur in the valuation fixed by the majority defeated the appraisal. The matter in question was in no proper sense an arbitration. The contract was in all of its terms agreed upon. One party was to sell and the other to buy at a valuation determined by the board of appraisers, and unanimity was not stipulated for. Unanimity was hardly to be expected in a board made up as this was. When a matter of purely private concern is submitted to the determination of either arbitrators or appraisers the rule seems to be that there must be unanimity of conclusion by such board, unless otherwise indicated by the terms of the submission. *Hobson* v. *M'Arthur*, 16 Pet. 182, 192; *Green* v. *Miller*, 6 Johns. 39; *Gas Company* v. *Wheeling*, 8 W. Va. 320, 351 *et seq.* The rule is, however, otherwise when the submission is one which concerns the public. In such submissions, whether it be the arbitration of a difference or the ascertainment of a value, a majority may act, unless otherwise indicated by the agreement for

submission. Why this distinction should exist is not altogether clear. In both instances the persons to whom the submission is made are acting under a power and must stay within it. The reason probably lies in the fact that public affairs are controlled by majorities, and, by analogy, a majority should control when the submission is a matter which concerns the public. But whatever the reason, so are the authorities. *Colombia* v. *Cauca Co.*, 190 U. S. 524; *The People ex rel.* v. *Nichols*, 52 N. Y. 478; *Gas Company* v. *Wheeling*, 8 W. Va. 320; *Grindley* v. *Barker*, 1 Bos. & Pul. 229.

The construction and acquisition of a system of water supply and distribution was a public municipal function. The Nebraska legislature, in 1903, went so far as to require municipal ownership of a water supply system in the city of Omaha, and that this should be accomplished either by construction or by the purchase of the existing system. The city, in compliance with and in the exercise of the power conferred when the existing plant was constructed, elected to purchase the existing system under the ordinance of 1880 and the power therein reserved. That in such circumstances the determination of the price to be paid by a submission was a matter of public concern, is too clear for argument. The cases cited above cover the point. The appraisal was not therefore defeated because not concurred in by all.

The distinction suggested by counsel that the authority for the submission must come from the public, if there be anything of substance in it, does not prevent the operation of the rule here, for the purchase upon a valuation settled by appraisers was in the ordinance of the city, in pursuance of legislative authority, and, in a very true sense, was an authority to submit to appraisers which came from the public.

2. The next objection is that the appraisers heard evidence in the absence of the city and without opportunity

to reply, and that this was such misconduct as to vitiate
the valuation. As already hinted, this was not a board
of arbitrators. An arbitration implies a difference, a dis-
pute, and involves ordinarily a hearing and all thereby
implied. The right to notice of hearings, to produce
evidence and cross-examine that produced is implied when
the matter to be decided is one of dispute and difference.
But when, as here, the parties had agreed that one should
sell and the other buy a specific thing, and the price should
be a valuation fixed by persons agreed upon, it cannot be
said that there was any dispute or difference. Such an
arrangement precludes or prevents difference, and is not
intended to settle any which has arisen. This seems to
be the distinction between an arbitration and an appraise-
ment, though the first term is often used when the other
is more appropriate.

. Counsel have cited and pressed upon us the case of
*Continental Insurance Co.* v. *Garrett*, 125 Fed. Rep. 589,
as a case where an appraisement of a fire loss was set aside
because evidence was heard in the absence of the parties.
But that was a case where the full amount of the insurance
was claimed as the extent of the loss. This was denied.
It was therefore a plain case of the submission of a dispute
or difference which had to be adjusted. The rule appli-
cable to a judicial proceeding therefore applied. It was in
fact an arbitration, though the arbitrators were called
appraisers. The dispute concerned the thing which had
been destroyed, the value of something which was not to
be inspected and valued from observation because it was
not in existence. Evidence was therefore essential to
show what had been destroyed as well as its value. The
case is wholly unlike the one here presented.

In *Collins* v. *Collins*, 26 Beav. 306, where there was a
contract for the sale of a brewery at a price to be fixed
by persons called arbitrators, one chosen by each party
and a third by these two, before entering upon valua-

tion; it was ruled that they were not arbitrators but appraisers, and the Master of the Rolls, Sir John Romilly, said: `

"But I do not think that in this particular case the fixing of the price of the property is an arbitration, in the proper sense of the term.  An arbitration is a reference to the decision of one or more persons, either with or without an umpire, of some matter or matters in difference between the parties.  It is very true that in one sense it must be implied that although there is no existing difference, still that a difference may arise between the parties; yet I think the distinction between an existing difference and one which may arise is a material one, and one which has been properly relied upon in the case.  If nothing has been said respecting the price by the vendor and purchaser between themselves, it can hardly be said that there is any difference between them.  It might be, that if the purchaser knew the price required by the seller, there would be no difference, and that he would be willing to give it.  It may well be, that if the vendor knew the price which the purchaser would give, there would be no difference, and that he would accept it.  It may well be, that the decision of a particular valuer appointed might fix the price and might be equally satisfactory to both; so that it can hardly be said that there is a difference between them.  Undoubtedly, as a general rule, the seller wants to get the highest price for his property, and the purchaser wishes to give the lowest, and in that sense it may be said that an expected difference between the parties is to be implied in every case, but unless a difference has actually arisen, it does not appear to me to be an 'arbitration.'  Undoubtedly, if two persons enter into an arrangement for the sale of any particular property, and try to settle the terms, but cannot agree, and after dispute and discussion respecting the price, they say, 'we will refer this question of price to A. B., he shall settle it,'

and thereupon they agree that the matter shall be referred
to his arbitration, that would appear to be an 'arbitration,'
in the proper sense of the term, and within the meaning
of the act; but if they agree to a price to be fixed by an-
other, that does not appear to me to be an arbitration."

In the present case there was not only no antecedent
disagreement as to price, but the ordinance under which
the purchase was to be made provided that the property
was to pass "at an appraised valuation, which shall be
ascertained by the estimate of three engineers," etc. The
board was accordingly made up of such engineers selected
because they were experts of experience in the service
they were expected to perform. That it was the under-
standing that these engineers were to examine and estimate
the value and acquaint themselves with the condition
and extent of the property in question in their own way
and not according to the procedure required in a judicial
proceeding, is made clear by the avowals made by the
counsel representing the parties at the beginning of the
valuation. Thus the attorney for the city, addressing
the valuers, said:

"As to the matter of the procedure to be adopted by
your board, as to the method of arriving at the amount
of property owned by the water company, and the deter-
mination of its value, the city of Omaha suggests that this
board, having been appointed as experts in regard to the
value of such property, ought to make a personal investi-
gation as to the amount and extent of the property of the
water company, together with its condition, and determine
therefrom its value. As to the method of arriving at the
amount and condition of the property of the water com-
pany, the city of Omaha suggests that this board may
arrive at such facts by any method or means deemed ad-
visable by it, but that, if the board shall determine to
take proof and testimony before it, that it should go no
further than to the question of the amount and condition

of the property, and that said testimony should not be conclusive upon this board, but simply for its advice and information in the matter.   It is not the opinion of the city of Omaha that it would be proper or necessary to call expert witnesses as to the value, since the members of the board have been selected as experts, (to) whose judgment the question of value must be submitted upon the examination of the property."

Counsel for the water company appear to have fully concurred in this view of the function of the board.

That the great bulk of the evidence was heard or sub-mitted in the presence of counsel representing both sides is true.   This course did not, however, preclude them from enlightening their judgment as experts by either personal inspection or by informing themselves in any other way of the value of the plant in question without calling in counsel if they desired further information.   The thing complained of is that the valuers called upon the company for their books and that they had these books gone over by an expert auditor of their own selection.   This, counsel say, was done without notice to the city and after the close of the hearings.   But it was not done secretly, for the city learned of it and asked an opportunity to be present when the books were submitted.   What informa-tion was derived from the books is not shown.   We have only the lone fact that the appraisers of their own motion asked an opportunity to look over and have audited the company's books, and that the company granted the privilege as "confidential information" for the use of the appraisers only.   Neither are counsel justified in saying that the books were called for after the matter was in the hands of the appraisers for conclusion.   When the par-ties had submitted their maps, plats, blue prints and such other evidence throwing light upon the value of the plant, as they desired, and had been heard in argument and upon brief, the chairman of the board said in substance to .

counsel that much time would be necessary to reach a conclusion; that the real work of valuation had been but begun, and that "much more information must be sought by this board."

There is not the slightest evidence in the record of partiality, bad motive or misconduct affecting the action of the board. Its members appear to have been gentlemen of high character professionally and otherwise, and if their conclusion is to be set aside it must be because they deemed it within their power to have a confidential examination made of the books of the company to assist them in arriving at a valuation.

If this was a technical arbitration of a matter of dispute or difference between the parties, to be heard and decided upon evidence submitted, the examination of the company's books without the consent of the city or the presence of its representatives would be such misconduct as would vitiate the award. In such a matter the rules relating to judicial inquiry would apply. *Continental Insurance Co.* v. *Garrett*, 125 Fed. Rep. 589, and cases cited. But in an appraisement, such as that here involved, the strict rules relating to arbitration and awards do not apply, and the appraisers were not rigidly required to confine themselves either to matters within their own knowledge or those submitted to them formally in the presence of the parties; but might reject, if they saw fit, evidence so submitted, and inform themselves from any other source, as experts who were at last to act upon their own judgment. *Kelley* v. *Crawford,* 5 Wall. 785, 790; *Railway Co.* v. *Moore*, 64 Pa. St. 79, 91; *Palmer* v. *Clark*, 106 Massachusetts, 373, 389; *M. E. Church* v. *Seitz*, 74 California, 287; *Curry* v. *Lackey*, 35 Missouri, 394.

In the absence of any evidence of actual bad faith we do not hesitate about agreeing with the Circuit Court of Appeals in the conclusion that there was no such misconduct as to vitiate the valuation.

3. The next contention is that the valuation includes property not within the submission, and which the city did not have power to buy. The point from which the water was taken by the existing water plant was beyond the corporate limits of Omaha. In the immediate suburbs of the city there are several villages outside the corporate limits. The distributing system of the Omaha Water Company has, from time to time, been extended to these outlying suburban towns. It is now said that the appraisers have valued these outlying distributing systems as a part of the plant to be acquired by the city under the ordinance electing to purchase.

As to the power of the city: The charter, § 27, Laws of Nebraska 1897, page 99, provided for the construction and maintenance of waterworks "either within or without the corporate limits of the city." This is said to only allow the location of pumping works or source of supply outside the city. The city does not therefore object to valuing the supply station and mains extending to the city as within the contemplated purchase. But it is said that the authority is limited to a distributing system wholly within the corporate limits. That the primary purpose was to supply the people of Omaha with water for public and private purposes is clear. But does that forbid that those who live outside may not be also supplied from the main plant, and, if necessary, by such extensions, not inconsistent with the primary object, as may prove desirable as suburbs grow up around the city?

These powers were supplemented by the charter of 1897. Under § 27 of that charter it was given, among other things, "power to appropriate any waterworks system, plant or property already constructed, to supply the city and the inhabitants thereof with water, or any part thereof, whether lying within said city or in part without the city and within ten miles from the corporate limits of such city, including all real estate, buildings,

machinery, pipes, mains, hydrants, basins, reservoirs and
all appurtenances reasonably necessary thereto, and a
part of or connected with said system, plant or property,
and franchises to own and operate the same, if any."
This was again supplemented by the act of 1903, chap-
ter 12, providing a method of procedure for acquiring mu-
nicipal water plants and the creation of a water board for
their control and management, being the act under which
the city was required to take steps to acquire its own water
plant system. Again, by the act of 1907, chapter 12a, it
is, among other things, provided by § 242, that the water
board may contract with any municipality adjacent to
said city to supply such municipality with water for
domestic, mechanical, public or fire purposes, a provision
plainly contemplating just such a condition as would en-
sue if the city should acquire the existing system of works
with a distributing system extending to villages adjacent.
The review of the legislation touching the power of the
city, and the conclusion of the Circuit Court of Appeals
from that legislation, that the city had the power to ac-
quire the system as it existed, and has the power to operate
so much of it as is intended to supply the suburban towns
adjacent which may be acquired, is full and satisfactory,
and meets our approval.

We are also satisfied with the conclusion of the Circuit
Court of Appeals that the acquisition of the system as it
existed at the time the city made its election to purchase
was within the contemplation of both the city and the
water company, and that the valuation of the system as
an entirety was the matter which the appraisers were re-
quired to do. What we shall say upon this point will
support our conclusion as to the power of the city, for the
legislation upon that matter must be read in the light of
the subject-matter and of all the known local conditions.
The most weighty fact in this connection is, that the
system was one single system, having a common source

of supply and common main connections therewith. Its dismemberment is not to be thought of unless it is clear that the ordinance exercising the option is so plainly limited to the purchase of only so much of the distributing system as lay wholly within the corporate limits as to admit of no other meaning. A presumption against dismemberment is not overthrown even if the city had no power to sell water to people or municipalities beyond its limits. If these outside distributing pipes could not be lawfully used by the city for the purpose for which the water company had used them, it does not follow that a contract to buy would be thereby any the less a contract to buy the plant as a unitary system. Aside from contract obligation which may pass with the plant, the city might cut off the supply of water to such outlying environs, if it saw fit, whether it could or could not legally supply water through the distributing pipes which had theretofore reached them. Certain it is that as the several towns adjacent had no source of supply, no pumping station of their own, disintegration would leave the water company with no means of supplying them with water. The distributing pipes under ground would, separated from the ownership of the pumping station, reservoir, filling, or settling basins, necessarily lose much of the value which attached to them as a part of a going plant.

The reservation in the ordinance under which the works were constructed should be read and interpreted in the light of the almost certain extension of the plant as the expansion and growth of the city might demand. The city, at the time the ordinance was passed, had some thirty thousand people. When the election to buy the plant was made it had, approximately, four times as many. As is usual in respect of growing cities, there had grown up around it groups of population, which, in some cases, expanded into semi-dependent municipalities. Con-

nected by continuous streets and car lines, they made one large community, and constituted greater Omaha. The water company, as was obviously expected from the beginning, expanded with Omaha and met the public necessities by including these outside populations within its distributing system.

The appraisers in making their estimate of valuation included $562,712.45 for the "going value." This separation of an element contributing to the value of each tangible part was done because required to be done under an order made in the Circuit Court in a suit in which the water board of the city of Omaha was complainant and the members of the board of appraisers and the water company were defendants. The object of that suit was to instruct the appraisers in respect to the mode and manner in which they should proceed. An order resulted which required the board to report the separate elements making up the aggregate value of the plant.

The option to purchase excluded any value on account of unexpired franchise; but it did not limit the value to the bare bones of the plant, its physical properties, such as its lands, its machinery, its water pipes or settling reservoirs, nor to what it would take to reproduce each of its physical features. The value in equity and justice must include whatever is contributed by the fact of the connection of the items making a complete and operating plant. The difference between a dead plant and a live one is a real value, and is independent of any franchise to go on, or any mere good will as between such a plant and its customers. That kind of good will, as suggested in *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, is of little or no commercial value when the business is, as here, a natural monopoly, with which the customer must deal, whether he will or no. That there is a difference between even the cost of duplication, less depreciation, of the elements making up the water company plant, and the

commercial value of the business as a going concern, is evident. Such an allowance was upheld in *National Waterworks* v. *Kansas City*, 62 Fed. Rep. 853, where the opinion was by Mr. Justice Brewer. We can add nothing to the reasoning of the learned Justice, and shall not try to. That case has been approved and followed in *Gloucester Water Co.* v. *Gloucester*, 179 Massachusetts, 365, and *Norwich Gas Co.* v. *City of Norwich*, 76 Connecticut, 565. No such question was considered in either *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, or in *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19. Both cases were rate cases, and did not concern the ascertainment of value under contracts of sale.

Aside from the errors pointed out in the petition for the writ of certiorari counsel have suggested certain difficulties before a final decree, which are not disposed of in the opinion or decree of the Circuit Court of Appeals. The Circuit Court had dismissed the bill. The Circuit Court of Appeals considered and decided all of the large questions which were involved under the bill, but did not direct the precise form of the decree which the Circuit Court should enter, and remanded the case with direction to reverse the decree dismissing the bill, and to proceed in accordance with the opinion. Referring to certain matters left open, the court, in its opinion, said:

"In a transaction of this magnitude there will always be encountered minor obstacles that will readily yield to business methods. What the parties cannot agree upon the trial court has full power to determine according to principles of right and justice. We refer here to such contentions as that there are two or three properties in the city of Omaha belonging to the company but not needed in the business, and also that there are supposed defects in its title to other properties. The latter are not of great importance in comparison with the magnitude of the entire system. The property not needed was ap-

praised separately and it can be excluded from the sale, and the trial court can determine whether the title to other properties is defective. It is not necessary that the title of the company to all the lands upon which its works are built or through which its pipes are laid should be a fee simple, perfect in every particular and subject to no criticism. An irrevocable license, for instance, would be sufficient, or a title based upon prescription. If, however, there should be found substantial defects opportunity should be given the company to remedy them, and if it is unable to do so the parts of the property so circumstanced can be valued and the purchase price abated accordingly. It would be expressing too narrow a view to say that an appraisal of a great system of waterworks under a contract of purchase must fail because the title to a small part not vital to the integrity of the system was afterwards found to be defective. That the deed tendered by the company was not such as the city was required to take is immaterial. It is sufficient that the company was able, ready and willing to do what might lawfully be required of it. At some time during the progress of the cause in the trial court the trustees of the mortgages should be made parties to the end that the precise amount of outstanding bonds may be ascertained and paid and the liens discharged concurrently with payment by the city of the purchase price. Doubtless the company will have to use the proceeds of sale in paying its mortgage indebtedness. Or if an arrangement is desired such as was made in the Kansas City case, whereby the mortgages are assumed by the city, and the company released from liability, the presence in the case of the trustees would facilitate it.

"The decree is reversed and the cause is remanded with direction to proceed to decree in accordance with the views expressed in this opinion."

We do not feel ourselves under any obligation to do

more than to hold that we find no error in the decree of
the Circuit Court of Appeals and to remand the case to
the Circuit Court to be proceeded with accordingly.

*Affirmed.*