13738

CONEY *ET AL.* v. BROAD RIVER POWER CO. *ET AL.*

(172 S. E., 437)

378

Messrs. *John M. Daniel, Attorney General, Irvine F. Belser, Albert F. Woods, Paul A. Cooper* and *Clint T. Graydon,* for petitioners,

*Messrs. Colquitt, Parker, Troutman & Arkwright, J. Prince Webster* and *George Bell Timmerman,* for respondents,

December 18, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The General Assembly of South Carolina, by an Act approved April 8, 1932, empowered the Railroad Commission of the State to regulate and fix the rates of "Persons, Corporations and Municipalities Engaged in the Generation, Transmission, Delivery of, Furnishing of Electricity for Light, Heat or Power, etc."

Pursuant to the authority vested in it by this Act, the Railroad Commission, on July 26, 1932, issued its rule directing the Broad River Power Company to show cause why its rates should not be investigated and reduced. The company filed its return in due time, and protested that its rates should not be reduced. On the issues thus made, the taking of testimony was begun by the commission September 20, 1932, and continued intermittently until late in December of that year. Arguments of counsel for the State and the company were heard by the commission December 28, 1932. The commission filed its order on January 9, 1933, together with its judgment and opinion, finding that the company's rates were unreasonably high and excessive, and directing the company to put into effect and operation the rates fixed

by the order of the commission, for the several classes of service. The company on January 11, 1933, filed a petition for a rehearing. Before this petition was disposed of, the company, on January 28, 1933, instituted a suit in the United States District Court for the Eastern District of South Carolina for the purpose of having the order of the Railroad Commission declared unconstitutional, and for the purpose of enjoining its enforcement. Thereupon the Railroad Commission applied to the Supreme Court of South Carolina for a writ of mandamus to compel the Broad River Power Company to comply with the order of the commission.

The power company filed a demurrer to the petition and a plea in abatement, and made a return and an answer, in which it contended that the suit which it had instituted in Federal Court deprived this Court of jurisdiction; and it challenged the constitutionality of the Act of the General Assembly, *supra,* and the action and order of the commission, on various grounds. Arguments upon these several phases of the proceedings were heard by this Court at different times, and final arguments were heard on the 30th day of June, 1933.

In the examination and consideration of the voluminous evidence and exhibits, taken and submitted, certain questions appear which, in the opinion of this Court, make it necessary to remand this matter to the Railroad Commission for the purposes hereinafter declared. Accordingly all issues and all questions of law and procedure, not herein specifically passed upon, are reserved for future consideration and determination.

It is conceded by counsel for the Railroad Commission, which we shall call the commission, that the Broad River Power Company, which we shall call the company, "is entitled to a rate which will yield to it a fair return upon the fair value of its property, after allowing for its proper operating expenses," and, we may add, after allowing for depreciation of the properties.

Manifestly, in order to arrive at a fair return upon the fair value of the company's property, there must be included in the inventory and the evaluation thereof all the properties of the company used or useful in its business of generating electricity and in its related business. This is the basis upon which the commission must fix the rates which it has commanded the company to adopt and put into effect.

In this instance the commission has excluded from its enumeration of the company's properties, and its valuation thereof, the physical properties of the Columbia Street Railway Gas & Electric Company, and has refused to credit it with the losses which the company claims it has incurred in operating the street railway since the decision of this Court of the case of *State ex rel. Daniel, Attorney General, v. Broad River Power Company, and N. H. Coit, Manager,* which opinion is found in 157 S. C., 1, 153 S. E., 537, 545. In that case the company contended that the street railway system was a separate and distinct entity from the gas and electric systems; that it was run at a loss which could only be made up from the revenues of the other properties of the company. In that case the issues had been referred to Mr. Lide, a learned and capable lawyer. In his report he said: "Aside from authority it is manifestly just and reasonable that the patrons of one public utility should not be required to contribute to the maintenance, or make up the losses of another public utility which they do not use." ·

This Court overruled his report and held that the company must operate the street railway even though it be called on to make up losses incurred in such operation out of the incomes derived from its other properties.

A cardinal issue made by the company in the case of *State ex rel. Daniel v. Broad River Power Company, supra,* was that the Broad River Power Company and the Columbia Street Railway, Gas & Electric Company are separate

and distinct corporations, unrelated entities. This Court held otherwise, and said:

"Adopting the view of the referee in holding that the two corporate respondents, Broad River Power Company and Columbia Railway, Gas & Electric Company, under the facts of this case, must be treated as one corporation, let us now consider the other questions involved. * * *

"The company having received its *primary franchise,* for the operation of all these public services under a grant from the State, we agree with the position of the petitioners *that the companies now before this Court,* and for the purposes of *this case* must be considered as one company, in the interest of the public and the parties to this cause, cannot be allowed to abandon the electric railway service on account of the alleged losses on the electric railway department alone. *According to our view the electric railway business is inseparable from the light and power business.* (Italics added.)
* * *

"As contended by petitioners, a public service corporation must perform all the services authorized by its charter as long as it retains any of the benefits of the charter granted by the State; *and the obligation must be determined by the productiveness of the corporation as a whole."* (Italics added.)

The opinion quotes in support of this position from the case of *Atlantic Coast Line R. Co. v. N. C. Corp. Comm.,* 206 U. S., 1, 27 S. Ct., 585, 51 L. Ed., 933, 11 Ann. Cas., 398, the following:

" 'As the primal duty of a carrier is to furnish adequate facilities to the public, that duty may well be compelled, although, by doing so, as an incident some pecuniary loss from rendering such service may result. * * * As the duty to furnish necessary facilities is co-terminous with the powers of the corporation, the obligation to discharge that

duty must be considered in connection with the nature and *productiveness of the corporate business as a whole.'* * * *

"As is well contended by petitioners, a public service corporation may be required to perform its charter functions even though by so doing a loss on the particular branch of service may be entailed. *The criterion is the entire public business of the company. It being established that the electric railway service is inseparably linked with the electric light and power services, it is apparent that under these cases the company may be required to carry on the electric railway service as long as it retains the electric light and power privileges.* (Italics added.)    *    *    *

"Furthermore, the facts in the case, as disclosed by the record, show that there has been no valid legal separation, *but a merger of the two companies.* It clearly appears from the record in the case that the Broad River Power Company owned all of the common stock in the Columbia Railway, Gas & Electric Company, consisting of 20,000 shares, and also owned all of the 8,953 shares of the preferred stock in said company, except 109 shares, for which it has deposited in a bank $100.00 per share.    *    *    *    The record also shows that when this transaction took place the Broad River Power Company retired all of the common stock with the exception of 217 shares and retired all of the preferred stock except 433 shares. Another incident which should have a bearing on the case is the fact that the companies had the same officers; the same president, vice-president, secretary, treasurer, assistant secretary, assistant treasurer, manager, auditor, and bookkeeper. The record    *    *    *    also shows that the auditor of the two companies was paid for his services by the same check.    *    *    *

" 'The Broad River Power Company with its auxiliary companies will continue to supply electric light and power, gas and electric railway service through the territory in and about Columbia, S. C.' " Advertisement of the company.

The company, in July, 1925, published in a newspaper in New York, the following, which is cited in the opinion of this Court:

" 'Broad River Power Company, organized in July, 1924, in South Carolina, *has acquired through merger* all the physical properties, franchises and other assets (except electric railway properties) of its former subsidiaries, Columbia Railway, Gas & Electric Company, Parr Shoals Power Company and Columbia Gas Light Company. The Electric Railway property will continue as Columbia Railway, Gas & Electric Company, whose entire common stock is owned by Broad River Power Company.' * * *

All of these circumstances force us to the conclusion that there has been a merger of the two companies, Columbia Railway, Gas & Electric Company and the Broad River Power Company. * * *

"As conceded by petitioners, mere acquisition and control of stock in one corporation by another corporation does not necessarily for all purposes make the corporations the same, but where it appears that the transaction was such as to give the corporation acquiring and controlling the stock an opportunity to benefit or to injure the interest of the other, the Courts should grant relief when right and justice require it, as in the case at bar. We are convinced that the Columbia Railway, Gas & Electric Company, by means of the several transactions referred to herein, was converted into a mere agency or instrumentality of the Broad River Power Company for doing its bidding, and that the two corporations, for the purposes of this proceeding should be considered, treated, and dealt with, as one. * * *

"Applying these principles to the facts involved in the case at bar, *that the Broad River Power Company got into its possession and control from the Columbia Railway, Gas & Electric Company $4,000,000 net worth of property, and also the franchise valued at $1,561,000, without paying any*

*consideration for the same, and leaving the Columbia Railway, Gas & Electric Company in an insolvent and helpless condition, unable to function, the conclusion is inescapable that the corporations are merged."*

There can be no escape from the conclusion that this Court has held that the Broad River Power Company has adsorbed the physical properties and franchise of the Columbia Railway, Gas & Electric Company, and the two companies have become one entity. This being true, can the commission rightfully and legally exclude from appraisal and valuation of the company's properties for rate-fixing purposes the physical properties and the valuation of the franchise of the Columbia Railway, Gas & Electric Company? We do not think so. Rates must be based upon a just enumeration and valuation of all the properties of the utility whose rates are under adjustment; otherwise that rule, which is conceded by the commission, is violated, which declares that "The Company is entitled to a rate which will yield to it a fair return upon the fair value of its property after allowing for its proper expenses."

It is patent that the fair value of the company's property is not ascertained, and hence is not the basis of the rates fixed, if there be excluded from the schedule and evaluation of such property valuable physical properties, franchises, and rights to which the company is entitled.

The commission was in error when it excluded from its inventory and valuation the properties of the Columbia Street Railway, Gas & Electric Company, and refused to give the company credit for the losses which the company has incurred in operating the street railway since the decision in the case of *State ex rel. Daniel, Attorney General, v. Broad River Company Co., supra.* That it was error to exclude the value of the street railway, gas and electric company's properties seems to be shown by the following authorities:

In the case of *San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus County* (Cal.), 233 U. S., 454, 34 S. Ct., 652, 58 L. Ed., 1041, it was held that the value of water rights owned by the company must be taken into account in establishing rates.

In the case of *Groesbeck v. Duluth, S. S. & A. R. Co.,* 250 U. S., 607, 40 S. Ct., 38, 40, 63 L. Ed., 1167, a case involving fixing maximum railroad rates, it was held to be error to treat the sleeping car, parlor car, and dining car services as separate operations. In other words, it was held that they must be included in fixing rates of fare.

In the same case it was held: "The legislature has declared that for the purpose of determining the right of an intrastate passenger to travel on any part of the company's lines at the rate of two cents a mile, all of the lines within the State must be treated as one; that those on which travel is light must be averaged with those on which it is dense; and obviously also that those parts of the system which are unprofitable must be taken with those which are profitable. *Every part of the railroad system over which the passenger is entitled * * * to ride for a two-cent fare must be included in the computation undertaken to determine whether the prescribed rate is confiscatory.*" (Italics added.)

The case of *Los Angeles Gas & Electric Corp. v. Railroad Commission of California,* 289 U. S., 287, 53 S. Ct., 637, 77 L. Ed., 1180, holds that: "Basis of calculating value of utility's property for rate purposes is fair value of such property."

It follows logically that, in order to reach "fair value," all of the property of the utilities company, used and useful in its business, must be included in the inventory and evaluation thereof.

"If the valuation of any one of the necessary elements of a public service plant is fixed by the rate-making authorities at a sum unjustly and unreasonably low in a substantial

amount, or if the value of an element of substantial value used or useful in maintaining or operating such a plant is entirely omitted by the rate-fixing authority and rates are based on the valuation so made, such unreasonable and unjust valuation or omission of valuation is the taking of private property for a public use without just compensation." *Bonbright v. Geary et al.* (D. C.), 210 F., 44 (2).

"An important purpose of state supervision is to prevent such discriminations, see *New York & Queens Gas Co. v. McCall, supra,* at page 351 [of 245 U. S.], 38 S. Ct., 122 [62 L. Ed., 337], and, if a public service company may not refuse to serve a territory where the return is reasonable, *or even in some circumstances where the return is inadequate but that on its total related business is sufficient, A. C. L. v. N. Car. Corp'n Comm., supra,* at page 25 [of 206 U. S.], 27 S. Ct., 585 [51 L. Ed., 933, 11 Ann. Cas., 398] ; *Missouri Pac. Ry. Co. v. Kansas, supra,* at page 277 [of 216 U. S.], 30 S. Ct., 330 [54 L. Ed., 472], *it goes without saying that it may not use its privileged position, in conjunction with the demand which it has created, as a weapon to control rates by threatening to discontinue that part of its service if it does not receive the rate demanded."* (Italics added.) *United Fuel Gas Co. v. R. R. Comm.,* 278 U. S., 309, 49 S. Ct., 150, 152, 73 L. Ed., 390.

The commission seems to hold that the company did not contend in argument that the street railway, gas and electric company's property should be included in the fixing of rates. The affidavits of Mr. J. B. S. Lyles and Mr. W. C. McLain show that the contention is untenable, and that these gentlemen, and especially Mr. McLain, maintained in their arguments before the commission that this property should be included in the inventory and valuation of the company's property used as the basis upon which rates were fixed by the commission.

However, upon examination, it will be found that the case of *State ex rel. Daniel v. Broad River Power Company,*

*supra,* was actually prosecuted by the City of Columbia and outlying districts to which the street railway system extends for the exclusive benefit of the city and of these communities; and, in the restoration of the system, no benefit inured to other cities and communities which were and are users of electric current furnished and sold by the Broad River Power Company. It would therefore be highly inequitable and unjust to require these towns and communities to contribute to the maintenance and support of the street railway system of the City of Columbia and its environs, in the fixing of rates for electric current. So, while it was error to exclude the street railway properties, and not to allow credit for losses sustained by the company in its operation of the street railway since the decision in the *Daniel case, supra,* such properties should be included and such credit allowed for the purpose of and in fixing rates only in the City of Columbia and in the outlying districts to which the street railway system extends and in which it is operated.

It appears to the Court that the commission committed error in fixing the "Going Concern Value" of the company's plant. We need not here discuss of what "Going Concern Value" consists. It is conceded by the commission that the company is entitled to have such value included in the basic valuation upon which the rates were fixed, which rates the commission has adjudged and ordered that the company put into effect. It is the manner in which such valuation was fixed by the commission to which the company takes exception.

It appears from the record that the only appraisals of going concern value were the division's appraisal, introduced in evidence by the commission, which is $1,226,848.00. The Jensen, Bowen & Farrel estimate was $2,280,000.00; and the Cheney appraisal of $4,055,436.00. These last two were introduced by the company.

The commission fixed the going concern value at $1,000,000.00. Conceding, if you please, that the commission has large discretionary power in fixing rates under the authority given it by the Act of the General Assembly, nevertheless its discretion is not an arbitrary one, but is a legal one, to be exercised in accordance with the facts in the case as shown by the evidence. In the present instance the commission disregards its own evidence as to the going concern value, and fixes the going concern value at $1,000,000.00. No authority is given, nor any evidence is offered, that this is the true value. If the commission may, without evidence of such value, adopt $1,000,000.00 as the going concern value, why may it not adopt $500,000.00 or $250,000.00? Counsel for the commission say in their brief: "It is impossible to arrive at any precise definition, or even calculation, of the amount of such going concern, but the amount depends upon the exercise of good judgment in relation to the type and nature of the business of the company considered in relation to the territory in which it operates."

This postulate is admitted. But the "exercise of good judgment" must be predicated upon facts shown by testimony, and not upon the opinion or speculation of those fixing the rates.

In the case of *McCardle v. Indianapolis Water Co.*, 272 U. S., 400, 47 S. Ct., 144, 150, 71 L. Ed., 316, the United States Supreme Court said: "The decisions of this Court declare: "That there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced, is self-evident. This element of value is a property right, and should be considered in determining the value of the property, upon which the owner has a right to make a fair return when the same is privately owned although dedicated to public use' "—citing cases from *Des Moines Gas Co. v. Des Moines,* 238 U. S., 153, 165, 35 S. Ct., 811, 59 L. Ed., 1244; *Denver v. Denver*

*Union Water Co.,* 246 U. S., 179, 191, 192, 38 S. Ct., 278, 62 L. Ed., 649; *National Waterworks Co. v. Kansas City* (C. C. A.)., 62 F., 853, 865, 27 L. R. A., 627; *City of Omaha v. Omaha Water Co.,* 218 U. S., 180, 202, 203, 30 S. Ct., 615, 54 L. Ed., 991, 48 L. R. A. (N. S.), 1084.

The value of this property right must be determined upon inspection and appraisal of the elements which go to make up the right, just as all other property values are determined. Those who inspect and determine this value must show by competent testimony how they arrive at their conclusion of such value, and it is the province of the Court to determine whether the finding is supported by the evidence. In the present instance the rate-fixing power overlooks the evidence, including that offered by itself, as to such value, and adopts a value lower than that shown by any of the evidence.

"Going Concern Value," which is an element of value in an assembled and established plant doing business and earning money over one not thus advanced, is a property right which should be considered in determining the value of property for rate-making purposes. *Los Angeles Gas & Electric Corp. v. Railroad Comm.,* 289 U. S., 287, 53 S. Ct., 637, 77 L. Ed., 1180, of date May 15, 1933.

It is claimed by the company that the commission has failed to include in its base valuation the correct number of acres of real estate owned by the company. It appears that, in arriving at the base value of the company's property for rate-fixing purposes, the commission found the number of acres owned by the company and used or useful in its business to be 2,939 acres, valued at $75,742.00. The commission admits that it has made no independent survey of the lands, but accepted the divison's appraisal, which was predicated upon the amounts and values set out in the Cheney appraisal which relates primarily to the Parr Shoals hydro land and reservoir, to wit: 2,939 acres.

The company in the appraisals now submitted claim to have 17,592 acres. The commission argues that the only evidence to justify this claim of increased acreage and valuation for flowage rights is contained in the new affidavit of Percy H. Wilson; that this alleged discovery of an additional 14,633 acres, which is not supported by any affidavits of the company's officers, "is too flimsy to deserve serious consideration." These additional affidavits were allowed by the order of this Court, with leave to the commission to reply to them. The commission admits that it has not made any independent survey to ascertain the number of acres the company owns and uses in its business; therefore it is not in a position to deny that the company does own and use the additional acres claimed. It will not be contested that, if it does own them, it is entitled to have them included in the inventory and appraisal used by the commission in fixing rates. It is within the power of the commission to ascertain by an examination of the records of the clerk's offices in the counties where the land is claimed to be situated and by surveys and other proper methods whether the company owns the land it now claims.

The cardinal question in this controversy which this Court must decide is this: Are the rates fixed by the commission confiscatory of the company's properties and property rights, or do they assure the company a fair return upon a fair valuation of its property? How may the Court decide that question if property and property rights of the company which should be included in the base inventory and valuation of the company's properties and property rights have been excluded by the commission when it fixed the rates?

The Court finds that it was error to exclude the value of the property and franchise of the Columbia Street Railway, Gas & Electric Company from the base value of the company's properties, and it was error not to allow credit to the company for any losses it may have sustained in the

operation of the street railway since the decision of the case of *State ex rel. Daniel, Attorney General, v. Broad River Power Co.* However, such properties shall be included and such credit allowed only for the purpose of and in fixing rates for the City of Columbia and the outlying districts to which the street railway system extends and in which it is operated.

It was error to fix the "Going Concern Value" at $1,-000,000.00 without evidence upon which to predicate such valuation.

If the company has the additional number of acres of land claimed by it, it is entitled to have the value thereof included in the base rate valuation of its properties.

It does not, however, follow from these findings, that the prayer of the petitioners be now denied and their proceeding dismissed. It appears to the Court that the proper course to pursue is to remand the matter to the Railroad Commission, with instructions to revise its proceedings for rate fixing by including in its inventory and appraisal of the properties of the Broad River Power Company used as the base for fixing rates the properties and franchise of the Columbia Street Railway, Gas & Electric Company; that it give credit to the company for any losses it may have sustained in the operation of the street railway during the year 1932; that it revise its valuation of the going concern value of the plant of the company in accordance with the evidence of such value as it appears in the record; that it ascertain whether the company owns real estate over and above 2,939 acres, used or useful in the operation and maintenance of its business, and that, if it finds that it has such lands, it include such additional acreage and the value thereof in the base inventory and valuation of the company's properties used for this rate-fixing purpose; that the Railroad Commission fix the rates for the Broad River Power Company in view of these additions, and report its action in the

premises with all convenient dispatch to this Court; and that in the meantime all other matters, issues, and questions involved and contained in the record before the Court be reserved for future consideration and determination.

It is so ordered, adjudged, and decreed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MR. JUSTICE CARTER (concurring in part):

While, in my opinion, the finding of the commission is supported by the record, considered as a whole, I think it proper that the case should be remanded to the commission for the purpose of taking additional testimony and passing upon the other issues referred to by the Court.