TRENTON AND MERCER COUNTY TRACTION COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT, INHABITANTS OF THE CITY OF TRENTON ET AL, RESPONDENTS.

Argued February 20, 1918—Decided March 21, 1918.

Street railroad corporations are taxed under the act *Pamph. L.* 1906, p. 644. The value of their property shall be ascertained by the local assessors and taxed at local rates. An annual franchise tax upon the annual gross receipts of such corporations is also provided for. On an appeal to the state board of taxes and assessment, by the prosecutor of the value of its property, located in several separate municipalities, it is illegal for the board to add an arbitrary sum called "going value" to the aggregate values of such property as found by the board.

On *certiorari*. On assessment of taxes 1916.

Before Justices BERGEN and BLACK.

For the prosecutor, *Edward M. Hunt, Frank S. Katzenbach, Jr.,* and *Frank Bergen.*

For the respondents, *Charles E. Bird, Willis P. Bainbridge, Alvin W. Sykes, Harvey T. Satterthwaite, Richard Stockton, Edwin C. Long, Dayton Oliphant* and *George L. Record.*

The opinion of the court was delivered by

BLACK, J.   In this case there is a controversy over the value of the property of the Trenton and Mercer County Traction Company for taxation for the year 1916. The value of the property was ascertained by the local assessors, under the act of the legislature. *Pamph. L.* 1906, *p.* 644. An appeal was taken to the county board of taxes of Mercer county, the values were adjusted and reduced; on a further appeal to the state board of taxes and assessment the values as fixed and ascertained by the county board were confirmed.

The values in the first instance were ascertained and fixed by the local assessors in the city of Trenton, the townships of Ewing, Hamilton, Lawrence, Princeton, Hopewell and the boroughs of Hopewell and Pennington. From each of these assessments the prosecutor appealed to the Mercer county board of taxation, which, according to the record, were heard and determined by that board, separate judgments being made as to each municipality. The prosecutor then appealed from each of the judgments to the state board of taxes and assessment, which affirmed the judgments made by the county board. This result by the state board was reached by appraising the property of the company, in each taxing district and considering the same in the aggregate, at one million five hundred thousand eight hundred and fifty-one dollars and three cents ($1,500,851.03), and adding thereto an arbitrary sum of five hundred and sixty-eight thousand and fifty-two dollars ($568,052), called by the board a "going value," thus making the values equal the value fixed by the county board of taxation. The values were considered in the aggregate and then subsequently subdivided in proportion to the value of the property in each municipality.

The values were ascertained under and in pursuance of the act of the legislature. *Pamph. L.* 1906, *p.* 644. This act provides that the property of street railroad corporations in each taxing district and for each year shall be ascertained by the local assessors. That such property shall be assessed and taxed at local rates, as provided by law. The act also provides that an annual franchise tax upon the annual gross receipts of every street railroad corporation shall be assessed by the state board of assessors, now the state board of taxes and assessment, and the tax, thus imposed by this act upon the franchise, the tax on the real and personal property of such street railroad corporations, shall be in lieu of all other taxes, &c.

The practical question, therefore, for solution is, What was the value of the prosecutor's property in these various taxing districts for the year nineteen hundred and sixteen (1916), and, in ascertaining those values, were the legal standards or

criterion of value applied? viz., what the property would sell for at a fair and *bona fide* sale by private contract on the 20th day of May—that is, the criterion of value declared by the statute? *Pamph. L.* 1903, *p.* 398, § 6. In the case of *Turnley* v. *City of Elizabeth,* 76 *N. J. L.* 42, Mr. Justice Garrison said: "The criterion established by the statute is a hypothetical sale, hence, the buyers therein referred to are hypothetical buyers, not actual and existing purchasers." It is quite clear that in this value of the tangible property no part of the franchise under the statute can be included (*Newark* v. *State Board of Taxation,* 67 *N. J. L.* 246; *Long Dock Co.* v. *State Board of Assessors,* 78 *Id.* 44; *affirmed,* 79 *Id.* 604) ; but should be considered, as attached to a valuable franchise, as a going concern (*Millville Water Co.* v. *City of Millville,* 84 *Id.* 411), because, to use the words of the brief, the first class of property, the physical represents the body; the second class of property, the franchise represents the life —that which makes the property a living concern; sever them and the value of each is greatly diminished, if not largely destroyed, but the statute commands that there shall be a separate valuation, by a separate set of officials.

In the return sent up with this writ of *certiorari,* by the state board of taxes and assessment, the rule applied by the board is thus stated; the market or exchange value of the property is its taxable value; the board took into consideration the original cost, cost of reproduction, depreciation, &c., not as absolute criterions of value, but only as elements in estimating market value. The duty of the board in this case was to ascertain, if possible, the market value of the property in question in May, 1916, and then the board further states, the several elements of the physical property of the appellant company, as shown by the careful, comprehensive analysis of the board's chief engineer, clearly aggregate one million five hundred thousand eight hundred and fifty-one dollars and three cents ($1,500,851.03). To ascertain the market value of the property there must be added to the physical value such a sum or percentage as will fairly represent going value, or that value which attaches to the property as a result of the

514    NEW JERSEY SUPREME COURT.

Trenton, &c., Trac. Co. v. State Bd. Taxes.    *91 N. J. L.*

unity of its ownership and use and its established system of successful operation, and then proceeds to add five hundred and sixty-eight thousand and fifty-two dollars ($568,052) as a reasonable allowance for going value, making the total valuation two million sixty-eight thousand nine hundred and three dollars ($2,068,903), the same value in the aggregate as fixed by the Mercer county board of taxation. This action of the board seems to us arbitrary and not considered or determined with reference to the value of each assessment in each municipality. We can find no legal justification for this action of the state board of taxes and assessment. The only cases cited in justification of this method of ascertaining value are cases dealing with property under condemnation, or when the rate-making power of the state was involved. It is hardly necessary to point out that those cases furnish no help and throw no light on the method of assessment of this property for taxation. In the case of *Public Service Gas Co.* v. *Board of Public Utility Commissioners,* 84 *N. J. L.* 463, a rate case so called, Mr. Justice Swayze speaks of "going value" or the cost of developing the business, but this is not a taxable value attached to the tangible property as a separate element of taxation. What is meant in the concrete by going value is not made quite clear in this case. We, however, understand that the term "going value" applied to the property of a street railroad corporation, as contrasted with the phrase "going concern," is that part of the value which shows the company's capacity to earn money, to make a return upon the capital invested, that in turn is primarily dependent upon its franchise, which by the statute is taxed accordingly, as it earns much or little, five per cent. upon the gross receipts; the value that is left is the value of the tangible property attached to a going concern. This, of course, excludes a value of the tangible property based upon the material merely as scrap, to be torn up and carried away, or, as Mr. Justice Lurton says, the company's "bare bones," that would not be the market value of this property in use. General terms and phrases in opinions of the courts, detached from the facts of the case then under consideration, cannot always be applied to a dif-

FEBRUARY TERM, 1918. 515

91 N. J. L.     Trenton, &c., Trac. Co. v. State Bd. Taxes.

ferent state of facts with like meaning. "Going value," as applied by Mr. Justice Lurton in the case cited of *Omaha* v. *Omaha Water Co.*, 218 *U. S.* 180, seems to us to express something different from what it expresses in this case. That case involved a bill seeking the specific performance of a contract for the purchase and sale of a system of water works, a condemnation case. It is true that $562,712.45 was included by the appraisers in making their estimate for the "going value." Mr. Justice Lurton said: "The value in equity and justice must include whatever is contributed by the fact of the connection of the items making a complete and operating plant. The difference between a dead plant and a live one is a real value." The learned justice in that case followed with approval the opinion of Mr. Justice Brewer, in the case of *National Water Works Co.* v. *Kansas City*, 10 *U. S. C. C. A.* 653. In that case the question before Mr. Justice Brewer was "the fair and equitable" value of the water works. So, the case of *Brunswick, &c., District* v. *Maine Water Co.*, 99 *Me.* 371, was a condemnation case. *Pioneer Tel., &c., Co.* v. *Westenhaven*, 29 *Okla.* 429, 444; 100 *Pac. Rep.* 359; 38 *L. R. A.* (*N. S.*) 1209, was a rate case in which the court said: "The going concern element of value must be considered in ascertaining the fair value of the plant." *Cedar Rapids Gas Light Co.* v. *City of Cedar Rapids*, 223 *U. S.* 655, was a rate case; it is not helpful in the consideration of this case.

A reading of those cases makes it clear that reasoning by analogy from condemnation, rate-making or taxation cases, the facts of each case must be considered and not merely the expressions or phrases used by the courts in the opinions, otherwise there will be a confusion of ideas.

We, therefore, conclude that this item must be deducted from the valuation.

It is further urged that the value of one million five hundred thousand eight hundred fifty-one dollars and three cents ($1,500,851.03), fixed by the state board of taxes and assessment, was ascertained by taking the cost of reproduction estimated by the engineering department of the board at two mil-

516     NEW JERSEY SUPREME COURT.

Trenton, &c., Trac. Co. v. State Bd. Taxes.     *91 N. J. L.*

lion three hundred and forty-eight thousand five hundred and ten dollars and ninety cents ($2,348,510.90) less depreciation. This method of ascertaining value was condemned by this court in the case of *Turnley* v. *City of Elizabeth, supra.* The evidence returned with the writ does not satisfy us that this method was adopted or applied by the state board. In its return the board says, and we think the evidence supports the statement, that it adopted the market or exchange value as the taxable value, except as to the one item above stated; that the board took into consideration the original cost, cost of reproduction, depreciation, &c., not as absolute criterions of value, but only as elements in estimating market value. We can see nothing objectionable or illegal in this method of ascertaining the market value of the property for taxation. On the argument the defendants insisted that the state board had no authority to rest its conclusions, as it did, upon separate valuations by its own engineer, made after the testimony had been closed and argument had before the board without giving the defendants the right to cross-examine those who made the estimates. *Long Dock Co.* v. *State Board of Assessors,* 86 *N. J. L.* 592. This is undoubtedly so, but the board in its findings stated that they were based in part upon the independent inspection and investigation of its chief engineer, as set forth in detail and made a part of the record, and that if any of the parties wish to combat these results a rehearing would be granted upon this feature of the case. No such application appears to have been made or refused, and the point seems to have been abandoned.

The result, therefore, is that the assessment will be confirmed at one million five hundred thousand eight hundred and fifty-one dollars and three cents ($1,500,851.03). The case is sent back to the state board of taxes and assessment with instructions to apportion the proper amounts to the respective municipalities, in proportion to the value of the property. Costs will be allowed on this appeal.