Johnson, J.
The real purpose of the complaint before the commission was to fix a schedule of rates to be charged by the company, and the values complained of were fixed solely for this purpose. The filing and overruling of the application for a rehearing before the commission is a necessary prerequisite to the maintenance of this proceeding in error, and by the provisions of Section 543, General Code, the company may not rely on any ground not set out in such application. The grounds are set out in the foregoing statement, and it will be *116 observed that the questions they make result from the valuation of the property of the company by the commission.
It is contended that the order of the commission is not sustained by the evidence and is contrary to law. In the various hearings, the results of extensive investigations by experts both of the company and of the commission were produced; the inventory filed by the company was examined by the expert of the commission, and the result of his ex-ámination was given in his testimony.
Prior to the commencement of the proceeding the plaintiff in error had been merged with The Central Union Telephone Company by the consent of the commission, and in this proceeding the engineers of the commission made a careful study of the property contained in the merged plant to estimate and determine the used and useful .property, and these results were submitted to the engineer of the company.
The record discloses that in the making of the valuation a great amount of work was done in the field, as well as in the office; and at the hearings, which covered a considerable period of time, a vast amount of testimony was introduced. In its finding the various elements of value were fully and carefully considered by the commission — buildings, overhead distributing system, underground distributing system, underground cable equipment, paving, central office equipment, overheads, and the contentions of the parties with reference to the going-concern value and with reference to the many *117 elements that contribute to the making up of the value of property concerned in these several heads.
It is earnestly insisted by the plaintiff in error that the commission really adopted the views and accepted the results arrived at by its engineers, and that it ignored and disregarded the testimony of the experts produced by the company.' Plaintiff in error insists that thereby the commission arrived at a result which fixed the value of the property below its real value.
Section 499-8, General Code, provides that the commission, for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities or railroads of this state, or for any other purpose authorized by law may investigate and ascertain the value of the property of any public utility or railroad in this state, used and useful for the service and convenience of the public.
Section 499-9, General Code, provides that “Such investigations and report shall show separately the property used and useful to such utility * * *
which said inventories and reports shall be filed in the office of the commission for the information of the governor and the general assembly.” Paragraph E of this section directs: “Depreciation, if any, from the new reproductive cost as of a date certain, for existing mechanical deterioration, for age, for obsolescence, for lack of utility or for any other cause, the percentage and amount of each class of depreciation, if any, to be specifically set forth in detail.” ' Paragraph F provides: “The net value as of a date certain, of all physical prop *118 erty other than land owned by such utility or railroad, to be derived by deducting the sum of the amounts of depreciation from the sum of the new reproductive costs.”
The reports, inventories, schedules, and the testimony of experts and other witnesses upon which the commission relied, as well as the detailed finding of the commission, disclose that these requirements of the statute were followed.
In truth, it may be said that the record discloses that the differences between the parties relate to questions of fact. It is apparent that the commission in the weighing of the testimony before it, and in the determination of the value, proceeded upon the lines, plans and principles laid down in the statute which defines its duties and by which it was created, although the company insists that the value fixed by the commission must have been arrived at in disregard of the rules of law which should govern in the ascertainment of values in such a case, and in disregard of the evidence offered by it.
It is well settled that this court will not substitute . its judgment for that of an administrative body as to matters within its province. Before the court will interfere with an order of the Public Utilities Commission it must appear from a consideration of the record that the action was unlawful or unreasonable. Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 362.
We have carefully examined the extensive briefs filed by different counsel, which have been of great assistance, not only in the consideration of the *119 questions suggested, but by the references made to the voluminous record in the case, and we are not able to say that the order of the commission is unlawful or unreasonable.
The value of the property as shown by the books of the company was $1,012,227.10, and there is a depreciation charged on the books of $113,056.69, leaving $899,170.41 as the book value.
The commission found the present value, as shown in the table given in the statement printed above, to be $677,222.95, which is $221,947.46 less than the book value claimed by the company.
The commission’s table shows a depreciation item of $144,686.58, which is $31,629.89 more than the same item as claimed by the company. This item was fixed upon by the commission upon the testimony as to the actual condition of the property at the time from observation. This is the method prescribed by the statute, Section 499-8 et seq., General Code.
A depreciation account carried on the books of a utility pursuant to a plan laid down in advance, and in obedience to our statute, while a wise and proper procedure in order to provide a fund for replacements, may or may not show the actual depreciation which • the property has undergone. Actual depreciation is not uniform; it varies in different years with the vicissitudes of actual experience. What it has been at a particular time can only be determined by actual observation and study at that time. The commission was justified in giving effect to the testimony of the witnesses touching this subject.
*120 The item of not used and useful property was determined' from the testimony to be $109,876.18. This was deducted from the reproduction value, in obedience to the requirements of the statutes, Section 499-8 et seq., General Code. The effect of this statutory provision is to prevent the inclusion in total valuations of public utility companies of property not being used or useful for the public service.
Its evident purpose is to safeguard the public from being compelled to pay a return for long periods of time on the value of property which is not used or useful for the service.
No injustice is done a company in such a case. It still has and controls the unused property. It may dispose of it, if it desires, and if the time comes when it is useful and used the company will be entitled to compensation for the use on a just and fair basis.
In addition to the two items above named the commission refused to include about $12,800 of the item designated “working capital,” $22,000 designated “bond discount,” and about $46,000 which the general manager of the company testified he would add to the appraisement value fixed in the original appraisement, on account of elements not included by the engineer, as a going-concern value. The commission refused to allow this for reasons set out in its finding, and points out that one of the reasons advanced in its support, that of the company being free from competition by reason of monopoly or merger, is expressly excluded from consideration by Section 614-23, General Code.
*121 The aggregate of the items named above approximates the difference in totals between the contestants in this proceeding.
The Public Utilities Commission is an administrative governmental agency, with regulatory powers. Aside from its necessary police power to require safe and efficient service its important function is to act as an arbitrator in the ascertaining and fixing of fair compensation to be paid to the utility without injustice to it or to the consumer.
The condition which gave rise to the study and discussion of" the general subject resulted from the fact that as substantially a monopoly privilege is granted to the utility company, competition being practically removed, the law of supply and demand cannot operate in fixing rates and charges.
Therefore, the government acting for the public, which granted the monopoly, must itself prescribe a method for arriving at a just compensation. While preventing the use of the essential advantages of the monopoly unfairly against consumers, it is equally important that justice be done the utility company, and that sufficient compensation be provided, and its continuance assured, to induce the investment of the capital necessary to the furnishing of the service.
When private property is devoted to the public use, its owner so devotes it bound with notice that it will be subject to public regulation both as to its use and as to the compensation to be paid for it. Munn v. Illinois, 94 U. S., 113.
As already shown the statutes of Ohio, Section 499-8 et seq., General Code, expressly lay down the *122 method for ascertaining the value which shall be used as a basis in such a case as we have here.
Section 499-9, paragraph F, reads: “The net value as of a date certain, of all physical property other than land owned by such utility or railroad, to be derived by deducting the sum of the amounts of depreciation from the sum of the new reproductive costs.”
The Ohio statutes are in harmony with the general view that is entertained as to what is just.
In City of Knoxville v. Knoxville Water Co,, 212 U. S., 1, it is said, at page 9: “This valuation was determined by the master by ascertaining what it would cost, at the date of the ordinance, to reproduce the existing plant as a new plant. The cost of reproduction is one way of ascertaining the present value of a plant like that of a water company, but that test would lead to obviously incorrect results, if the cost of reproduction is not diminished by the depreciation which has come from age and use.” The court also says at page 10: “In the view we take of the case it is not necessary that we should undertake the difficult task of determining exactly how much the master’s valuation of the tangible property ought to have been diminished by the depreciation which that property had undergone. It ■is enough to say that there should have been a considerable diminution, sufficient at least to raise the net income found by the court above 6 per cent upon the whole valuation thus diminished.”
In the examination of this and similar cases we have been impressed that there is much confusion of terminology in the discussion of the subject. *123 There has been no general agreement as to the word value and what are proper elements in the valuation of properties such as are involved here.
It seems to be clear that the term may be used in several different senses. As said by Whitten in his work on “Valuation of Public Service Corporations,” page 799: “The term value may signify: (1) inherent utility, or.value in use: (2) cost of production, or normal value; (3) purchasing power, or exchange value.” And at page 804 the author quotes from an opinion of the New York Public Service Commission as follows: “In such
a case the earning power of the plant is uncertain until the decision as to the rate is made, because that is the very thing the controversy is about. It follows that in a rate case the earning power cannot be considered in determining what is the value of the property for the reason that such value depends upon the earning power and the earning power depends again upon the rate, and the rate depends upon the decision which may be made in the case.”
There is a similar confusion in connection with the estimation of the good-will value in rate cases. It may be said that the good-will value of any business enterprise is the value that results from the probability that old customers will continue to trade with the established concern. It is well understood that in the valuation of a business in a negotiation for its sale or exchange, or other purpose, such valuation is entirely incomplete without a proper, estimate of the worth of the good-will of the business, which was possibly the result of long effort *124 and large expense. It is equally apparent that where the concern to be valued is a public utility, which has practically a monopoly, the public, that is the customers, have no choice. They are compelled to deal with the concern whether they wish to or not.
The concern may or may not have the good-will of the public with whom it deals, but this plays a very small part in the earning power of a company which is in the possession of a practical monopoly of the business. Therefore, in such a case the element of good-will value is not a thing to be estimated as part of the capitalization upon which the public must pay a fixed charge. On the other hand, the value that results from the fact that the concern is in active operation, that the physical property, the buildings, the equipment and plant and capital are all active, and together make a going concern, is a thing that must be taken into consideration.
As was said in City of Omaha v. Omaha Water Co., 218 U. S., 180, 202: “The value in equity and j'ustice must include whatever is contributed by the fact of the connection of the items making a complete and operating plant. The difference between a dead plant and a live one is a real value, and is independent of any franchise to go on, or any mere good-will as between such a plant and its customers. That kind of good-will, as suggested in Willcox v. Consolidated Gas Co., 212 U. S. 19, is of little or no commercial value when the business is, as here, a natural monopoly, with which the customer must deal, whether he will or no.”
*125 The justice of these principles is recognized and carried into the provisions of the General Code, to which we have referred, touching the subject.
As pointed out, Section 499-9, General Code, provides for the making of. the inventory by the commission in the manner stated. Paragraphs E and F are hereinbefore quoted, and paragraph G provides: “If there shall be any additional value given to the value of the property of a public utility or railroad due to the possession of a franchise to perform a public service, or for good-will or for financing, such additional value shall be separately and specifically set forth, together with the basis for the computation or estimate of such additional value.” All of the elements in the different paragraphs of said Section 499-9 are required to be included in the making up of the value as a whole of the utility. But by the provisions of Section 614-23, General Code, the public utilities commission in fixing reasonable rates to be charged by a public utility is required to have due regard to the value of all the property of the utility actually used and useful for the convenience of the public, excluding therefrom the value of any franchise or right to own, operate or enjoy the same in excess of the amount actually paid to any political 'subdivision of the. state or county, as the consideration of such franchise or right, and exclusive of any value added thereto by reason of a monopoly or merger, and to the necessity of making reservation out of the income for surplus, depreciation and contingencies, and of all such other matters as may be proper according to the facts in each case.
*126 It is apparent that the commission in this case had no other purpose than to arrive at the reasonable and just valuation of the property used or useful to furnish the service, and no reason is pointed out why an expert selected by it should be, or was, otherwise than wholly disinterested, or that he should or did have any desire to put other than the proper value on the property.
We think it clear that the attitude of the commission was fair, and this court would not be justified in entering into a nice differentiation of details.
It is of course true that if the initial duty had been ours we might have arrived at a different result as to depreciation, or might have included in the estimate this or that item that was not allowed by the commission. It had the testimony and the assistance of the engineers and experts appointed by itself, and also those employed by the company, and as above indicated we find nothing in the case that would warrant us in holding that its finding was unreasonable or unlawful.

Order affirmed.

Nichols, C. J., Newman, Jones, Matthias and Donahue, JJ., concur.
Wanamaker, J., concurs in the judgment but not in the syllabus.